### ELIZA FARNUM *vs.* CHRISTIAN F. PETERSON.

A deed to a disseisor from one to whom the disseisee has since the disseisin given a deed of the land, is a release of the right of the disseisee therein.

In an action on the covenant against incumbrances in a deed given by the defendant, while seised of the land, to the plaintiff, and under which the plaintiff entered, it appeared that the paramount record title was in A.; that A. gave a quitclaim deed of the land to B., who gave a mortgage deed thereof back to A.; that B. then gave a quitclaim deed thereof to C.; that neither A., B. nor C. ever entered upon the land, and that A. assigned the mortgage, and C. gave a quitclaim deed of the land, to the plaintiff. *Held,* that the plaintiff was entitled to recover such reasonable sum as she paid to A. and C. for the assignment and deed to her.

CONTRACT on the covenant against incumbrances in a deed from the defendant to the plaintiff of land in Boston. Writ dated December 1, 1871.

At the trial in the Superior Court, before *Rockwell,* J., it appeared that in 1850 the land was conveyed by the trustees of the Warren Association to Isaac Campbell, and Campbell mortgaged it back to the trustees, who in 1851 assigned the mortgage to Hall J. How and others; that in 1852 Campbell gave to Elnathan Davis a quitclaim deed of the land, containing a recital that the land was subject to the mortgage, and a covenant that Campbell would warrant and defend the land against all persons claiming by, through or under him; that in 1853 Hall J. How and others gave a quitclaim deed of the land to Campbell, and on the same day Campbell gave a warranty deed thereof to the defendant, who occupied the land, claiming title, until 1862, when he conveyed it to the plaintiff, by the deed containing the covenant declared on; that the plaintiff took possession under the deed and continued in possession until she conveyed to Barry Sullivan, as hereinafter mentioned.

It further appeared that in 1852 Elnathan Davis died intestate, leaving his father, Jonas Davis, his heir, and his estate was duly administered on ; that in 1858 Jonas Davis gave a quitclaim deed of the land to Francis L. Capen, who mortgaged it back to Jonas Davis ; that on November 28, 1870, Capen gave a quitclaim deed thereof to Barry Sullivan ; that on November 30, 1870, Jonas Davis assigned the mortgage to William G. Farnum, the plaintiff's husband, and on December 3, 1870, Sullivan gave a quitclaim deed of the land to the plaintiff ; and that on the same day the plaintiff and her husband conveyed the land to Sullivan. It was not claimed that Jonas Davis or Capen ever entered upon the land.

It also appeared that Capen lived near the land, passed it frequently, and often spoke to the plaintiff while in possession, but never mentioned that he had any claim on the land ; and that no person ever gave the defendant or the plaintiff notice of any claim on the land until November 1870, when the plaintiff, discovering a record title in Capen and Davis, sought them out and procured from them the conveyances above mentioned.

The plaintiff introduced evidence tending to show that the consideration of these conveyances and the expenses connected with their execution amounted to nearly $1000. No objection was made to the reasonableness thereof.

The defendant requested the judge to rule that if Jonas Davis was disseised when he made the deed to Capen and when Capen made the mortgage back to him, nothing passed by said conveyances ; that for the same reason nothing passed by the deeds of Davis to the plaintiff's husband, or from Capen to Sullivan, or from Sullivan to the plaintiff, and therefore the plaintiff had not extinguished the outstanding record title ; that the quitclaim deed of How and others to Campbell conveyed a title to the land, or operated as an assignment of their mortgage ; that the conveyances between Sullivan and the plaintiff and between Davis and the plaintiff's husband did not entitle the plaintiff to recover the amount she had paid to obtain said conveyances ; and that the plaintiff was entitled to nominal damages only."

The judge declined so to rule, and ruled " that the deed from How and others to Campbell was merely a release of the mort-

gage ; and that the several deeds of Jonas Davis, Capen and Sullivan, though they may have been made by persons disseised, were still so far valid as to extinguish the outstanding record title and enable the plaintiff to recover the sums of money she had actually and in good faith paid to free the land from record defects of title or incumbrances thereon." The question of disseisin was not submitted to the jury.

The jury returned a verdict for the plaintiff for $996.85, and the defendant alleged exceptions.

*B. Dean,* for the defendant.

*G. W. Park,* for the plaintiff.

WELLS, J. Whatever may have been the nature and extent of the title or right which Campbell acquired from How and others, and conveyed to the defendant, it was not an absolute or perfect one. The right of redemption from the mortgage held by How and others remained outstanding in Jonas Davis as heir of Elnathan Davis. That right does not appear to have been foreclosed in any manner.

It is immaterial, therefore, whether the defendant acquired a legal interest under the mortgage title, or held the land by disseisin only. By means of a writ of entry, or a bill to redeem, or both, Davis might have been restored to possession and full title ; and thus the title which the defendant conveyed to the plaintiff would have been defeated. Such an outstanding right is an incumbrance, in the sense of the covenant against incumbrances. *Prescott* v. *Trueman,* 4 Mass. 627. *Chapel* v. *Bull,* 17 Mass. 213.

There was, then, a breach of that covenant shown in this case. The measure of damages, if the incumbrance has been removed, is the fair and reasonable amount expended, in good faith, in removing it.

We are satisfied that it has been removed. The quitclaim deeds from Davis and Capen, although not competent to confer seisin, or to pass the legal title to a third party, yet were competent to release the title of the grantors to any one who had the possession, and thus to merge the two interests.

When it is said that the deed of one, who is disseised, is void, it is intended only that it is inoperative to convey legal title and seisin, or a right of entry, upon which the grantee may maintain an action in his own name against one who has actual seisin. It is not void as a contract between the parties to it. The grantee may avail himself of it against the grantor by way of estoppel; or by suit upon the covenants; or may recover the land by an action in the name of the grantor. Although he has no right of entry, yet if by any lawful means he comes into possession, he may then avail himself of the title of his disseised grantor, and, by uniting that to his own present possession, defeat recovery by the intermediate disseisor. *Waite* v. *Lindsay*, 6 Met. 407, 413. *Cleaveland* v. *Flagg*, 4 Cush. 76. And his title will also be made good against any one attempting to set up a deed from his grantor subsequent to his own. *White* v. *Patten*, 24 Pick. 324. It is true, that Capen, having never gained possession of the land, could neither convey title nor transfer to his grantee any right of action against his own grantor upon the covenants in the deed to himself. But there is nothing to prevent that deed from operating as a release from Davis of all claim or right, in favor of any party in possession, who, by succession of apparent conveyance, might be able to avail himself of it, consistently with the rules of law in this respect. The same considerations which forbid the transfer of an adverse title by a disseisee, favor such a construction of deeds as will tend to unite the seisin with the apparent title of record.

The evidence that Capen knew of the occupation of the defendant and did not disclose his own claim or right, and that the plaintiff sought out the outstanding title and procured the deeds of quitclaim, without calling upon the defendant to clear the title, or giving him an opportunity to do so, was competent upon the question of good faith, and the reasonableness of the expenditure, and thus to affect the damages. But no question of law arises therefrom; and the case finds that "no objection was made to the reasonableness thereof."

The case appears to have been properly submitted to the jury.

*Exceptions overruled.*