JOHN M. HALSTED et al., Respondents, *v.* JACOB SILBERSTEIN et al., Appellants.*

Real property — tax titles — sufficiency of comptroller's notice to occupant at expiration of time to redeem — proofs of service — when comptroller's deed need not be acknowledged — effect of comptroller's deed — Statute of Limitations.

A deed is not champertous where, at the time it was executed and delivered to the grantee, his grantor was in possession, even though there was adverse possession at the time such grantor took title.

A notice of sale of lands for taxes, required by statute to be served upon the owner or occupant after the premises have been sold, stating that the conveyance by the comptroller will become absolute unless the premises are redeemed within six months, and that thirty-seven and one-half per cent must be added to the taxes and costs, the amount of which is given, is sufficient without carrying out such per centage in dollars and cents.

The fact that the time for redemption is computed from the day of the last sale, giving two full years therefor from the day on which such sale closed, does not prejudice the owner, since it adds to the time in which he had the right to redeem.

The proof of service of such notice is not defective when it is shown that there was only one occupant of the premises, and that it was served upon him by leaving it with his wife at his place of residence.

---

*This case was decided June 8, 1909. A motion for re-argument was made which was decided October 19, 1909. The opinion was held until decision of that application. The memorandum on denial of that motion is now reported in connection with the opinion as handed down in the first instance.

A tax deed executed by the comptroller which is witnessed as required by statute, when it is accompanied by evidence of service of notice of sale and proof of expiration of time for redemption, is entitled to record without being acknowledged.

A statute of limitations intended as a retrospective law must give a reasonable time to enforce a remedy, available at the time of its passage, before the bar of the statute will apply.

The statute (Laws 1885, chap. 448, section 2) which makes the comptroller's deed conclusive evidence of the validity of a tax sale unless an action is brought within six months after the expiration of the two years allowed by law to redeem, while in some respects a curative law, is primarily and essentially a statute of limitations, and the time given by the stat. ute is a reasonable one.

The comptroller's deed of lands sold at a tax sale, together with notice to occupant and proof of service thereof, was recorded in 1887, the plaintiffs and their predecessor in title continuing in possession until 1897, when the purchaser at such sale obtained possession. *Held*, that while the plaintiffs had no available remedy against the state until after they were dispossessed in 1897 and the running of the short Statute of Limitations was postponed until the happening of that event, immediately thereafter they had a remedy by ejectment and the statute began to run; hence the statute had run against an action commenced in 1906 and became conclusive evidence not only that the tax was properly levied, but that all the notices given required by law previous to the expiration of the time to redeem were regular and regularly given, published and served.

The recording of the deed being prohibited until the proofs of the service of the notice to redeem had been made, and the time therein specified had expired, and the certificate of the comptroller to that effect had been given, the certificate became the evidence of the notice and the service thereof, which is required by the statute to be recorded in connection with the deed.

*Halsted* v. *Silberstein*, 122 App. Div. 909, reversed.

(Argued March 26, 1909; decided June 8, 1909.)

(Motion for re-argument submitted June 18, 1909; decided October 19, 1909.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered November 27, 1907, affirming a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Samuel H. Wandell* and *Stephen M. Hoye* for appellants. The tax of 1875 was lawfully assessed on the premises. (*Keyes* v. *Miller*, 90 App. Div. 596; *Marsh* v. *Campbell*, 143 N. Y. 335; *Chase* v. *Wemple*, 144 N. Y. 478; *B. & S. L. Co.* v. *Supervisors*, 48 N. Y. 101; *People* v. *Cassidy*, 46 N. Y. 46; *Turner* v. *Boyce*, 11 Misc. Rep. 502; *Wheeler* v. *Spinola*, 54 N. Y. 377; *Pope* .v. *Hanmer*, 8 Hun, 265; 74 N. Y. 240; *Trustees, etc.,* v. *Kirk*, 68 N. Y. 459; *Doolittle* v. *Tice*, 41 Barb. 181.) The proceedings for the sale of the property for taxes were in all respects regular and vested a good title in appellants under the comptroller's deed. (*Ellis* v. *Clark*, 39 Fla. 714; *Graves* v. *Bruen*, 6 Ill. 167; *Barcello* v. *Hapgood*, 118 N. C. 712; *Wood* v. *Knapp*, 100 N. Y. 109; *Ensign* v. *Barse*, 107 N. Y. 329; *Colman* v. *Shattuck*, 62 N. Y. 348.) The respondents were barred by statute from maintaining the action. (*People* v. *Turner*, 145 N. Y. 451; *Turner* v. *State*, 168 U. S. 90; *S. L. Co.* v. *Comptroller*, 177 U. S. 328; *Ostrander* v. *Darling*, 127 N. Y. 70; *Jackson* v. *Rowe*, 106 App. Div. 65.)

*Sidney V. Lowell* for respondents. The attempted tax of 1875 and the sale following it were invalid. (*B. R. R. Co.* v. *Suprs. Erie County*, 48 N. Y. 101; *Stewart* v. *Crysler*, 100 N. Y. 382; *People ex rel. Barnard* v. *Wemple*, 177 N. Y. 77; *Joslyn* v. *Rockwell*, 128 N. Y. 334; *Hilton* v. *Fonda*, 86 N. Y. 347; *Cromwell Case*, 123 N. Y. 496; *Douglas* v. *Supervisors*, 172 N. Y. 313.) No statute can make a sale for a void or paid tax good so as to transfer the title from an owner in possession to a tax sale purchaser. (*Hayes' Case*, 71 N. Y. 495; *Joslyn* v. *Rockwell*, 128 N. Y. 334; *Ensign* v. *Barse*, 107 N. Y. 329; *People ex rel. Barnard* v. *Wemple*, 117 N. Y. 83; *Gilmore* v. *City of Utica*, 131 N. Y. 33; *People* v. *Turner*, 145 N. Y. 457; *Meigs* v. *Roberts*, 162 N. Y. 377; *Wallace* v. *McEchron*, 176 N. Y. 429; *Hagner* v. *Hall*, 10 App. Div. 581; 159 N. Y. 552; *Landon* v. *City of Syracuse*, 19 App. Div. 45.) The deed and certificate were not acknowledged and, therefore, were not entitled to be recorded.

(1 R. S. 756, § 4; *Armstrong* v. *Combs,* 15 App. Div. 246; *Irvin* v. *Campbell,* 121 N. Y. 353; *Townsend* v. *Edwards,* 25 Fla. 582; *Hill* v. *Gordon,* 45 Fed. Rep. 276; *Johnstone* v. *Sutton,* 45 Fed. Rep. 296; *Green* v. *McGrew,* 72 N. E. .Rep. 1049; *Leftwich Case,* 100 Va. 164; *State* v. *Harman,* 50 S. E. Rep. 828; *Graton* v. *Holliday,* 189 Mo. 322.)

HAIGHT, J.    This action was brought in ejectment to recover possession of certain premises situated in the late town of Flatbush, now borough of Brooklyn, city of New York, known as plot No. 33 upon a map entitled "Map of Linden Terrace Beautiful Villa Plots," located on the Flatbush side of Prospect Park, Brooklyn, Long Island, now on file in the office of the register of the county of Kings, which said map is known as No. 787, the parcel being of the width of seventy-five feet and its depth extending from Linden avenue to Ridgewood street.    The trial court has found as facts that the plaintiffs are the record owners of the premises in question; that they obtained title thereto through their mother, Mary J. Halsted, who in the year 1868 became possessed thereof, and rented the same to one James Conners, who went into possession and occupied the lands for farming purposes until her death in 1893, and thereafter continued to occupy the same as the tenant of her children and of these plaintiffs until the year 1897.    It further appears from the findings of the trial court that in 1875 the assessors of the town of Flatbush assessed the lands in question as nonresident, valuing the same at $570.00, upon which a tax was extended by the supervisors of $9.94; that the same was not paid, and thereafter the comptroller of the state caused a notice of a sale for that and other parcels to be published in the papers designated for such purposes, to the effect that on the 10th day of November, 1881, such premises would be sold for the non-payment of the taxes; that the last date of publication of notice in one paper occurred on the 21st day of October, 1881, and in the other on the 26th day of October, 1881, and that no notice was published during

the week intervening between those dates and the 10th day of November following, at which time sale commenced ; that the sale so advertised commenced on the 10th day of November, 1881, and continued until the 23rd day of November of that year ; and that the lands in question were struck off to the People of the state, to whom the comptroller, on the 30th day of October, 1884, executed a deed in the ordinary form purporting to convey the said premises to the People of the state, which deed was subsequently recorded in the office of the clerk of the county where the lands were located, without its ever having been acknowledged before an officer authorized to·take the acknowledgment of deeds. Subsequently and on the 28th day of May, 1885, a notice of sale was served upon James Conners, the tenant, by leaving it at his place of residence with his wife, and the person so serving it swears that he examined the land and inquired whether there was then any other occupant thereon, and could not ascertain that there was any and believed that there was then no occupant on the said premises. Such notice stated that it was understood that Conners resided upon or occupied the premises on the 23rd day of November, 1883, and also that, " Unless the consideration money, with the addition of $37\frac{1}{2}$ per cent and 10 cents for the comptroller's deed shall be paid into the treasury of the state for the benefit of the grantee within six months after evidence of the service of the notice is filed in the comptroller's office, the conveyance of the comptroller will become absolute, and the occupant or occupants and all others interested in the said land shall be forever barred from all right or title thereto." Thereafter and on the 14th day of February, 1887, the comptroller executed a certificate to the effect that the proofs of the service of the notice upon Conners were filed in his office and that more than six months thereafter had elapsed, and that the money required to redeem the land from such tax sales had not been paid into the treasury. This certificate was then recorded at the same time that the deed of the comptroller to the People of the state was recorded. The defendants claim to have obtained their title through a pat- ·

ent from the state, based upon the title so obtained upon such tax sale, and thereupon the defendants' predecessor in title entered into the possession of the premises in 1897, and induced Conners, the tenant, thereafter to attorn to them and to become their tenant by paying the rent to them. This continued until the 1st day of January, 1906, when the plaintiffs regained possession and constructed a fence upon the premises. But eighteen days thereafter the possession was again taken by the defendants, who have since held the same.

The trial court found as conclusions of law that the assessment of the land in question in 1875 as non-resident was of no legal effect and the tax thereafter sought to be levied was void; that the notice of the tax sale for November 10th, 1881, was not published the time required by law immediately preceding the day appointed for the sale; that the notice of sale attempted to be served upon Conners was insufficient for the reason that it did not express the $37\frac{1}{2}$ per cent in dollars and cents, and that it did not state the amount that had been paid for the deed ; that the attempted service of the notice upon Conners was not legal; that the time given to redeem expired on the 19th day of November, 1885, instead of on the 23rd of that month, as stated in the notice; and that the deed of the comptroller to the People of the state, together with the certificate, notice and proofs of service thereof were not acknowledged before an officer authorized to take an acknowledgment of deeds, and consequently were not entitled to be recorded; that the patent issued by the state and the mesne conveyances from the grantee thereof down to but not including the deed to the defendants, were executed and delivered while the plaintiffs were in possession of the premises ; that the possession taken by the defendants was unlawful, and that the plaintiffs should have judgment to recover the same, together with the damages, the amount of which was found, and judgment was ordered accordingly.

The defendants' deed is not champertous. At the time it was executed and delivered to him, his grantor was in possession of the premises, and therefore, as to the defendants,

the plaintiffs were not holding adversely.   It is true that they
held adversely when the defendants' grantor, Lillian V.
Rourke, received her deed, but her deed was only void as to
the plaintiffs by reason of their so holding.   She could have
maintained an action in the name of her grantor to recover
the possession of the premises, and upon obtaining possession
in such an action, it would inure to her benefit.   Instead of
doing that, she obtained possession peaceably.   The plaintiffs'
tenant attorned to her and paid the rent to her, and this con-
tinued from the year 1897 until after her conveyance to the
defendants in April, 1905, a period of about eight years.   In
January, 1906, the plaintiffs entered upon the premises and
built a fence ; but eighteen days thereafter the defendants
regained possession and have held the same ever since.   It thus
appears that for upwards of eight years the plaintiffs rested
upon their rights, permitting Rourke to occupy the premises
and receive the rents therefor and to finally sell and convey
the same to the defendants, whom we must deem to be inno-
cent purchasers for value.   We think that under the circum-
stances the plaintiffs cannot now be permitted to question the
validity of the defendants' title upon the ground of cham-
perty.   Although Rourke had no right of entry against the
plaintiffs, yet if she by lawful means obtained possession, she
may avail herself of the title of her grantor, and by uniting
that to her own possession, make a valid title.   (*Farnum* v.
*Peterson*, 111 Mass. 148–151 ; *Livingston* v. *Proseus*, 2 Hill,
526 ; *Poor* v. *Horton*, 15 Barb. 485–497 ; *Cleveland* v.
*Flagg*, 4 Cushing, 76 ; *Warner* v. *Bull*, 13 Metcalf, 1–4.)

The trial court having found that the lands in question
were occupied, and that finding having been unanimously
affirmed by the Appellate Division we are bound by such
determination, and under the Constitution have no power to
review the evidence upon which the trial court reached that
conclusion.   It consequently follows that the assessment in
1875 of the premises as non-resident was erroneous.   We shall
also assume, for the purposes of this case but without defi-
nitely so deciding, that the statute requiring the publication of

the notice that the premises will be sold for taxes, contemplates the publication of such notice for the ten weeks immediately preceding the date on which the sale is to commence. Beyond this we are disinclined to adopt the views of the trial court with reference to the existence of other defects in the defendants' title. We think that the notice that the statute required to be served upon the owner or occupant after the premises had been sold for the non-payment of taxes, complies with the requirements of the statute. The notice served described the property and gave the amount of the taxes and costs that had accrued up to that time, being the consideration money paid by the state, then provided that unless said consideration money, with the addition of 37½ per cent and 10 cents for the comptroller's deed shall be paid into the treasury of the state, etc., the occupant or other persons should be forever barred from all right or title thereto. The 37½ per cent of the consideration money could readily be figured by the person desiring to redeem, and it does not appear to us that it was necessary to have the 37½ per cent figured in dollars and cents in the notice. Six months was given in which to make the payment after the notice had been served. The notice also demands 10 cents for the comptroller's deed. It does not in terms state that that amount was paid to the comptroller for executing and delivering the deed. But we think that should be inferred, in view of the fact that the statute requires the payment for the deed. The notice also states that it is understood that James Conners resided upon or occupied the premises on the 23rd day of November, 1883. That is the date upon which it was claimed that two years would elapse after the sale of the premises. As we have seen, the sale commenced on the 10th day of November and closed on the 23rd day of November, 1881. During that period all the sales of non-resident lands in the state were made by the comptroller, and the last day on which such sales were made was the day fixed from which the two years given by the statute to redeem should run. It is claimed in this case that the sale of this particular parcel took place

on the 19th day of November instead of the 23rd. However that may be, the counting the time from the day of last sale, giving two full years from the time on which the sale closed, appears to have been the practice adopted; and certainly the owner has no cause for complaint, for it adds to instead of deducting from the period of time in which he has the right to redeem. It is further contended that the evidence of service of the notice was defective. It is that it was served upon Conners by leaving it at his place of residence with his wife. The statute provides that the notice "may be served personally, or by leaving the same at the dwelling house of the occupant, with any person of suitable age and discretion, belonging to his family." We think that we should assume that the wife of Conners was a person of suitable age and discretion with whom to leave the notice, and inasmuch as she was occupying his dwelling house, she should be regarded as belonging to his family. In addition to the proof of the service of the notice on Conners as the occupant of the premises on the 23rd day of November, 1883, the affidavit of the person serving the notice states that he examined the land and made inquiry and ascertained that there was no other person than Conners occupying said premises at the time of the service. It, therefore, appears to us that no defect is apparent with reference to the contents of the notice or the service thereof. (Laws of 1855, chap. 427, sections 68, 69.)

It is further contended that the deed executed by the comptroller was not entitled to be recorded, for the reason that it was not acknowledged before an officer authorized to take the acknowledgment of deeds. The statute provides that, "Such conveyance shall be executed by the comptroller, under his hand and seal, and the execution thereof shall be witnessed by the deputy comptroller, surveyor general or treasurer, and all conveyances hereafter executed by the comptroller, of lands sold by him for taxes, shall be presumptive evidence that the sale, and all proceedings prior thereto, from and including the assessment of the land, and all notices required by law to be given previous to the expiration of the two years allowed to redeem,

were regular, according to the provisions of this act, and all laws directing or requiring the same, or in any manner relating thereto." (Laws of 1855, chap. 427, § 65.) Again, under the provisions of section 68, to which we have already referred, it is further provided that the conveyances made by the comptroller shall not be recorded until the expiration of the time given in such notice, and the evidence of the service of such notice shall be recorded with such conveyance. It will thus be seen that the statute prescribes how the comptroller's deed shall be executed. It then provides that it shall not be recorded until the notice of the sale and the service thereof upon the occupant of the lands, to which we have already referred, has been made and the time expired for the redemption, and then the deed, with the evidence of the service of such notice, is required to be recorded. In this case the deed was executed by the comptroller, under his hand and seal, and was witnessed by the deputy comptroller. It was executed in the manner required by the statute, and after the service of the notice of sale and of the proofs of service were made upon the occupant, and the time had expired in which the occupant was allowed to redeem, and that fact was certified to by the comptroller, the deed with the certificate and the evidence of the service of the notice were recorded as required by the statute. The execution of the deed was an act of a state officer, performed by him in accordance with the requirements of the statute, and we think no acknowledgment was necessary.

It is true that in 1898 the legislature, by chapter 339, amended the provisions of the Tax Law, to which we have referred, by providing that, " Every certificate of conveyance executed by the comptroller under this act may be recorded in the same manner and with like effect as a conveyance of real estate properly acknowledged or proven." And also we find, under the Laws of 1902, chapter 344, like powers given to the comptroller again requiring his deeds to be recorded with like effect as if acknowledged before an officer authorized to take acknowledgments. These enactments followed the practice that had theretofore existed and should be con-

strued as confirmatory thereof and not as nullifying all previous records of deeds given by the comptroller.

We are thus brought to a consideration of the provisions of chapter 448 of the Laws of 1885, section 65, which chapter by the provisions of chapter 217 of the Laws of 1891, was extended and made applicable to all of the counties of the state, except Chautauqua and Cattaraugus. It provides as follows : " Such conveyances shall be executed by the comptroller, under his hand and seal, and the execution thereof shall be witnessed by the treasurer or deputy comptroller, and all such conveyances that have been heretofore executed by the comptroller, and all conveyances of the same lands by his grantee or grantees therein named, after having been recorded for two years in the office of the clerk of the county in which the lands conveyed thereby are located, and all outstanding certificates of a tax sale heretofore held by the comptroller that shall have remained in force for two years after the last day allowed by law to redeem from such sale shall, six months after this act takes effect, *be conclusive evidence* that the sale and all proceedings prior thereto, from and including the assessment of the land and all notices required by law to be given previous to the expiration of the two years allowed by law to redeem, were regular and were regularly given, published and served according to the provision of this act." While this statute had .no application to the lands in question at the time that the various steps were taken to perfect the title, it was, by the act of 1891, extended to all of the counties in the state, with the exception of two. It thus became applicable to the proceedings under review.

It is now contended that the foregoing statute has no application to the case under consideration, and if it has, it is violative of the provisions of the Constitution of the state in so far as it purports to cure the error in assessing resident lands as non-resident. The question thus presented is of vast importance to the people of the state, for this statute has now been in force nearly twenty years and presumably many titles have been accepted by virtue of its provisions. It must

be conceded that expressions occur in the opinions of this
court which tend to sustain the contention made, notably in
the case of *Ensign* v. *Barse* (107 N. Y. 329). FINCH, J., in
considering a similar statute pertaining to the collection of
taxes in the counties of Chautauqua and Cattaraugus, in sus-
taining the constitutionality of the act, stated, however, that
it did not apply to jurisdictional defects. And in *Joslyn* v.
*Rockwell* (128 N. Y. 334), PECKHAM, J., in considering the
act in question, sustained the constitutionality of the act,
upon the authority of the *Ensign* case, but says with refer-
ence thereto that, "For the purpose of showing that the
deeds of the comptroller were void as given without jurisdic-
tion, evidence was offered by defendants and received by the
court, which tended to show that the taxes, for the non-
payment of which the lands were sold by the comptroller,
were assessed as lands of a non-resident, while at that time
they were occupied by some one representing defendants'
grantor. It was submitted by the court as a question of fact
to be passed upon by the jury, whether the lands at the time
of the assessment were occupied. There was also some evi-
dence on the part of the defendants tending to show that the
taxes upon these lands were paid to the collector before the
return was made by the collector to the county treasurer.
The court instructed the jury that if the lands were occupied
when assessed as lands of a non-resident, or if the taxes had
in fact been paid before the return was made to the comptrol-
ler, then in the one case the assessment was void, and in the
other case all proceedings after the payment were void. We
think the court was right in both branches of its charge.
The defect was jurisdictional in both cases. The act of 1885
(Chap. 448) is one, by its title, relating ' to the collection of
taxes on lands of non-residents, and to provide for the sale of
such lands for unpaid taxes.' It is provided that occupied
lands are not the lands of non-residents. (1 R. S. 389, § 3.)
And where lands of a non-resident of the county are occu-
pied by a resident of the town, an assessment to the owner
in the 'non-resident' part of the roll is illegal, and the

lands should be assessed to the resident occupant. (*People ex rel. v. Wemple, Comptroller*, 117 N. Y. 77.)    If the lands were occupied the act of 1885 would not apply." (p. 339.) The learned judge also states in his opinion that, " It is claimed that one in possession of all his rights cannot be compelled to resort to legal proceedings or else run the risk of losing them.    The question does not arise in this case, for we hold, as in the case of *Ensign* v. *Barse* (*supra*), that the statute is not to be construed in that way.    There is very weighty authority for holding such a statute in the case of one in possession to be invalid.    (Cooley's Constitutional Limitations [3d ed.] 366 and cases in note 1.)    We leave the matter without expressing an opinion in regard to it."

This question was again considered by CULLEN, J., in *Hagner* v. *Hall* (10 App. Div. 581), which was affirmed on the opinion below (159 N. Y. 552), in which it was held that the assessment of a tax in the name of one who was not the owner or occupant of the land was not cured by the statute in question.    He also referred to the question of the constitutionality of the act suggested in the *Joslyn* case.    And again it was referred to in the case of *People* v. *Ladew* (189 N. Y. 355–360), but it was left undetermined.    In the *Joslyn* case the determination of the constitutional question was avoided by holding that the assessment of the land as non-resident when in fact it was resident land was a jurisdictional defect, and, therefore, the statute did not apply.    The learned judge, in writing the opinion in that case, followed closely the decision made in the *Ensign* case, and in doing so overlooked one important distinction between the statute under which that decision was rendered and the statute under review by him. In the *Ensign* case the statute was curative only, and in no respects was a statute of limitations.    In the statute under consideration we have a provision specifying a time that must elapse before the deed becomes conclusive evidence.    The views of the learned judge with reference to what constitutes a jurisdictional defect have also been questioned.    It is contended that the assessors had jurisdiction to assess the land

either as occupied or non-resident; that a question of fact was thus presented to the assessors of determining in the first instance as to whether the lands were in fact occupied or not; that in determining that question they acted judicially, and if they erred it was an error of fact merely and not a jurisdictional defect. The rule is that the legislature, by a retrospective statute, may cure defects in legal proceedings which do not extend to matters of jurisdiction or are not void on constitutional grounds, if the defect is such as could be dispensed with by the legislature in its original statute providing for the proceeding. (*Ensign* v. *Barse, supra.*) The legislature could, therefore, have provided for the assessment of taxes as against the land in all instances, whether resident or non-resident, upon giving a time for the hearing of owners. The legislature has provided that if the taxes on lands assessed to a resident shall be returned as unpaid, in consequence of their becoming vacant, or in default of goods and chattels of the occupant sufficient to satisfy the tax, the supervisor of the town or ward in which the land was assessed shall add a description thereof to the assessment roll of the next year in the part thereof appropriated to taxes on lands of non-residents, and shall charge the same with the uncollected tax of the preceding year; and the same proceedings shall be had thereon in all respects as if it was the land of a non-resident. It thus follows that the proceedings for the sale of lands for the non-payment of taxes from that time on becomes the same, whether it is resident or non-resident. While these considerations were apparently overlooked, and not considered in the *Joslyn* case, we do not deem it necessary in this case to pursue the discussion of that question further. For in this case we have another question presented, which we think renders the determination of that question unnecessary.

The constitutional question to the effect that one in possession of all of his rights in lands cannot be compelled to resort to legal proceedings, or else run the risk of losing them, suggested in Cooley's Constitutional Limitations, and referred to in the *Joslyn* case, does not arise in this case; for, under the

view taken by us, the plaintiffs lost none of their rights until they were dispossessed by the purchaser in 1897.

The answer expressly sets forth the statute of limitations embraced in the second section of the act of 1885, which, in substance, limited the provisions of the act to certain counties specifically named and then provided that the act shall not affect " any action that shall be begun, proceeding taken, or application duly made within six months thereafter for the purpose of vacating any tax sale or any conveyance or certificate of sale made thereunder." This provision, by chapter 217 of the Laws of 1891, was made applicable to all of the counties in the state with the exception of the two heretofore named, and in it the provision above quoted to the effect that it shall not affect any action begun, etc., made within six months thereafter, was re-enacted and continued. It will thus be observed that these provisions are virtually a statute of limitations ; for, after the comptroller's deed had been recorded in the office of the clerk of the county in which the lands are located for a period of two years, it, six months after the act takes effect, becomes *conclusive* evidence that the sale and all proceedings prior thereto, from and including the assessment of the lands and all notices required by law to be given previous to the expiration of the two years allowed by law to redeem, were regular and regularly given, published and served according to the provisions of the act. But it shall not affect any action or proceeding brought within six months thereafter for the purpose of vacating any tax sale or conveyance. It is well settled that a statute of limitations intended as a retrospective law must give a person reasonable time to enforce a remedy available to him before the bar of the statute will apply. In this case the statute gives a period of six months and that time has been recognized by the courts as reasonable.

These questions were fully considered by our present Chief Judge CULLEN in the case of *Meigs* v. *Roberts* (162 N. Y. 371, 377). In that case he clearly draws the distinction between a curative act and a statute of limitations, and says with

reference to the same statute we now have under consideration : " We are of opinion that the lapse of time between the record of the conveyance of 1884 and the commencement of this action barred the right to the plaintiff to maintain it, even assuming the other questions in the case should be resolved in his favor. The learned Appellate Division held that the failure to publish a proper redemption notice was jurisdictional as to the conveyance of 1884, and, hence, not cured by chapter 448 of the Laws of 1885, and cited *Ensign* v. *Barse* (107 N. Y. 329) and *Joslyn* v. *Rockwell* (128 N. Y. 334) as authorities for that proposition. We think the learned court took too narrow a view of the statute of 1885. This statute, though in some aspects a curative law, is primarily and essentially much more ; it is a statute of limitation. It was distinctly held to be such in two decisions of this court (*People* v. *Turner*, 117 N. Y. 227 ; *Same* v. *Same*, 145 N. Y. 451, 459) and by the Supreme Court of the United States (*Turner* v. *New York*, 168 U. S. 90). A curative act in the ordinary sense of that term is a retrospective law acting on past cases and existing rights. The power of the legislature to enact such laws is, therefore, confined within comparatively narrow limits, and they are usually passed to validate irregularities in legal proceedings. \* \* \* But there may be in legal proceedings defects which are not mere informalities or irregularities, but so vital in their character as to be beyond the help of retrospective legislation ; such defects are called jurisdictional. This principle does not apply to a statute of limitations, for such a statute will bar any *right, however high the source* from which it may be deduced, provided that a reasonable time is given a party to enforce his right." (*Saranac Land & Timber Co.* v. *Comptroller*, 177 U. S. 318.)

While it is thus settled that the time given in the statute is reasonable, it must also appear that there was a remedy available to a person to enforce or protect his rights before the bar will apply. This question has recently received the attention of this court in the case of *Saranac Land & Timber Co.* v. *Roberts* (195 N. Y. 303), in which it has been held that no

remedy was available to the record owner until the comptroller was vested with the possession of the lands sold for taxes by the publishing of the notices provided for by section 4 of chapter 453 of the Laws of 1885 and that, consequently, the running of the short Statute of Limitations provided for by the amendment of 1891 above referred to, was postponed until the possession of the land was vested in the comptroller. This, we think, is decisive of the question we have under consideration. The deed, with the certificate of the comptroller that notice to the occupant of the lands had been given and the proof of service thereof had been made, was recorded in the office of the clerk of the county on the 11th day of April, 1887, in liber 128 on pages 2 and 167. The plaintiffs remained in possession until 1897 when they were dispossessed by the purchaser from the state of the tax title, who, as we have seen, occupied the premises for upwards of eight years thereafter. This action was commenced January 31st, 1906. While the plaintiffs had no available remedy against the state, under the authorities, until after they were dispossessed in 1897, and consequently the running of the short Statute of Limitations was postponed until the happening of that event, it is clear that immediately thereafter they did have a right of action as against the purchaser in ejectment, and that then the statute did commence to run. But, as we have seen, they rested upon their rights for a period of upwards of eight years thereafter before the bringing of this action and consequently the statute in the meantime did run and by the express provisions thereof the record of the deed became conclusive evidence not only that the tax was properly levied but that all the notices given required by law previous to the expiration of the time allowed by law to redeem were regular and were regularly given, published and served.

The judgment should, therefore, be reversed and a new trial ordered, with costs to abide the event.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, VANN, WERNER and HISCOCK, JJ., concur.

Judgment reversed, etc.

Memorandum on motion for re-argument:

HAIGHT, J. It is now alleged in the moving papers that the notice of the tax sale and the evidence of the service thereof were not in fact recorded at all, and that the only paper recorded at the time of the deed was the certificate of the comptroller. I shall, therefore, now consider the question as to whether the notice and the service thereof were required by the statute to be recorded.

Section 68 of the statute provides for the serving of the notice and the contents thereof, and " no conveyance made in pursuance of this section shall be recorded, until the expiration of such notice, and the evidence of the service of such notice shall be recorded with such conveyance." Section 69 provides for the manner of the serving of the notice. Section 72 provides that the grantee or the person claiming under him shall, within one month after the service of such notice, file with the comptroller a copy of the notice served, together with the affidavit of some person who shall be certified as credible by the officer before whom such affidavit shall be taken, that such notice, as is above required, was duly served, specifying the mode of service. Section 73 provides that, " If the comptroller shall be satisfied by such copy and affidavit that the proper notice has been duly served, and if the moneys required to be paid for the redemption of such land shall not have been paid, as hereinbefore provided, he shall, under his hand and seal, certify such facts, and the conveyance before made shall thereupon become absolute; and the occupant, and all others interested in said lands shall be forever barred of all right and title thereto."

It will thus be observed that the service of the notice of the tax sale and the specifying of the time in which redemption must be made and the service of such notice, does not form a bar, under the statute, for the party may redeem within the time specified. The essential fact, therefore, establishing the bar is the certificate of the comptroller, to the effect that the notice complied with the statute and had been duly served; that the time had elapsed within which redemption must be

made; and that the land had not in the meantime been redeemed. It also appears that the notice, or a copy thereof, together with the affidavit of the service, must be filed within one month in the office of the comptroller. There they must remain. No authority is given for their removal from the office of the comptroller for record in any of the other counties of the state.

I am, therefore, of the opinion that the recording of the deed being prohibited until the proofs of the service of the notice to redeem had been made, and the time therein specified had expired, and the certificate of the comptroller to that effect had been given, the certificate became the evidence of the notice and the service thereof, which is required by the statute to be recorded in connection with the deed. The other questions raised upon the motion for re-argument require no further comment. The original opinion has been revised so as to be in accord with the views herein expressed.

The motion for re-argument should be denied.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, VANN, WERNER and HISCOCK, JJ., concur.

Motion denied.