Bernard S. Meyer, J.
This bar-claim action raises the question of the effect of an error of the tax assessors in locating, on the land and tax map, the dividing line between properties. Plaintiff, Lily Conklin, except as her title was affected by the tax sale of Lot 110, Block A, Section 26, is the owner by inheritance of land encompassed by all of Lot 111 and the southernmost one quarter of Lot 110. Defendant Jablonski, the only contesting defendant, acquired title to Lot 110 by mesne conveyance from the tax sale purchaser of that lot. Defendant Jablonski moves pursuant to CPLR 3211 (subd. [a], par. 5) to dismiss the action on the grounds of res judicata and because, she claims, the action having been brought more than six years after the recording of the treasurer’s deed to the tax sale purchaser is barred by the Statute of Limitations (contained in Nassau County Administrative Code [L. 1939, ch. 272], § 5-54.0, subd. b). Plaintiff cross-moves for leave to add a party plaintiff and a party defendant and to serve a supplemental complaint. For the reasons hereafter stated, defendant’s motion is denied. Plaintiff’s cross motion is granted.
FACTUAL BACKGROUND
Since the motion is made prior to answer, the facts on which it is to be decided are to be drawn from the complaint and affidavits. The facts necessary to decision are undisputed and are as hereafter .stated.
Lily Conklin’s predecessor in title, her father-in-law, acquired title in 1908, by metes and bounds description, of the property now encompassed in the southernmost quarter of Lot 110, of the one and one-half story frame house located thereon, and of Lot 111, from Mary E. Conklin. Mary E. Conklin continued to own the land encompassed in the northernmost three quarters of Lot 110 and a two and one-half story house thereon. Mary Conklin died in 1951, the two and one-half story house became dilapidated, her administratrix failed to pay the 1960 taxes, a tax sale of the lien resulted, and in December 1962, the treasurer conveyed to the tax lien purchaser, one Harris, by deed *288 referring to ‘ ‘ Section 26, Block A, Lot 110 on the Nassau County Land and Tax Map
The treasurer’s deed was recorded on January 2, .1963 and on February 25, 1963, Harris began a bar-claim action in the County Court in which Lily Conklin, but not Mary E. Conklin or her administratrix, was named as one of the parties defendant. The complaint in that action covered nine separate parcels of land at diverse locations within the county, parcel number 2 being identified simply as “Section 26, Block A, Lot 110”. With respect to the reason for joining the various defendants named, the complaint contained only the allegation: ‘ ‘ That the defendants unjustly claim or might claim an interest or easement in said premises adverse to that of the plaintiff, the particular nature of such interest being a claim in fee on the part of all of the defendants herein, except ’ ’ defendants other than Lily Conklin.
Lily Conklin admits service upon her of “a document ’ ’, which it may be inferred was the summons and complaint, that being what the affidavit of service says was served on her. She checked with the Department of Assessment and was advised that she was the owner of Lot 111, on which the taxes were not in default, and since the ‘ ‘ document ’ ’ referred only to Lot 110 she took no further action. Judgment was entered on default on August 2, 1963, on the basis of an affidavit (only part of which is contained in the moving papers, but which the court has requisitioned and of which it takes judicial notice, George v. Time, Inc., 259 App. Div. 324, affd. 287 N. Y. 742) of the attorney for plaintiff in that action reciting ‘ ‘ That deponent has inspected the premises described as Parcels Nos. 2, 3, 4, 6, 8 and 9 of the complaint herein and finds all of them are vacant and unoccupied, except * * * Parcel No. 2 of the complaint herein [Lot 110], which is improved with a dwelling house, but which said structure is completely uninhabitable”. On August 9,1963, Lot 110 was conveyed by Harris to one Connolly, defendant Jablonski’s immediate predecessor in title, by a deed bearing the notation “No consideration ”.
Lot 110 is roughly rectangular in shape, being 107 feet across its northern border and running south approximately 429 feet to the northern border of Lot 111. Lot 111 is an irregular pentagon, its western line being the continuation of the western line of Lot 110, but its eastern line veering abruptly eastward from the end of the eastern line of Lot 110 and then back to the west. At about the middle of Lot 110 stands the dilapidated two and one-half story frame house above referred to, and, on *289 its southernmost quarter, the one and one-half story house conveyed by Mary Conklin to Lily Conklin’s predecessor. On Lot 111 the only building is a garage 10.5 feet by 21.5 feet in size. Had the tax map lines been drawn consistently with the metes and bounds descriptions of the two properties, the dividing line between them would be located some 117 feet north of the line shown on the map, and the one and one-half story house would be located on Lot 111.
The assessment on Lot 111 from 1962 through 1971 has been ‘1 Land $1,000. Total $3,350. ’ ’, thus reflecting the existence of the house, and since it is undisputed that the house has existed on Lily Conklin’s property since before the 1908 conveyance to her father-in-law, it may reasonably be inferred that the assessments of Lot 111 prior to 1962 likewise reflected the existence of the house. Through 1963 Lot 110 was carried on the assessment rolls at $1,800 for land and $4,100 total, but on the basis of a petition submitted in 1963 by Harris or Connolly to have the property declared vacant because of the uninhabitable condition of the house located thereon, the assessment on Lot 110 was reduced in 1964 to, and remains, ‘ ‘ land $1,800. total $1,800.”
The taxes on Lot 111 have never been in default and the one and one-half story house has been occupied by Lily Conklin and her husband or by her tenants from at least 1935 and through June, 1970. In June, 1970 the then tenant left and Lily Conklin sought to transfer the house and land to her nephew. None of the tenants were ever contacted by Harris or Connolly or in any way disturbed in possession. By deed dated July 28, 1970, defendant Jablonski acquired title from Connolly to Lot 110 and during the late summer of 1970 made claim to the one and one-half story house, preventing entry by Lily Conklin and her nephew. The present action was begun by Lily Conklin within two months thereafter.
THE STATUTE OF LIMITATION'S
The limitations point will be dealt with first, since, if plaintiff is barred by limitations in any event, there is no need to consider the res judicata question.
Unlike sections 1020 (subd. 3) and 1136 (subd. 7) of the Real Property Tax Law or section 53 of the Suffolk County Tax Act (L. 1929, ch. 152, as amd. by L. 1941, ch. 140) and unlike section 93 of the Nassau County Tax Act (L. 1916, ch. 541, as added by L. 1919, ch. 154, § 1) which it superseded, section *290 5-54.0 (subd. b) of the Nassau County Administrative Code is not stated in one continuous paragraph. It is, rather, subdivided within itself and appears in the following form:
“ b. Every such conveyance shall be attested by the county treasurer and the seal of the county treasurer shall be attached thereto. When so executed, the conveyance shall be presumptive evidence that:
“ 1. The sale of the tax lien was regular.
“ 2. All proceedings prior to such sale, including the assessing of the lands affected by such tax lien were regular.
“ 3. All notices required by section 5-51.0 of the code to be given previous to the expiration of the time allowed by that section for the satisfaction of the tax lien, were given and were regular and according to law. After six years from the date of record of any such conveyance in the county clerk’s office, such presumption shall be conclusive.”
Since the six-year conclusive presumption .sentence is part of subparagraph 3, it can be argued that the word 1 ‘ such ’ ’ in its concluding clause refers only to the presumption concerning notices and not to the regularity of the sale and proceedings prior to sale (American Smelting & Refining Co. v. Stettenheim, 177 App. Div. 392, 396; Cannon v. Towner, 188 Misc. 955, 965), the more so because doubts as to the construction of taxing statutes are to be resolved in favor of the taxpayer and the burdens imposed by such statutes are not to be extended by implication (Matter of American Cyanamid & Chem. Corp. v. Joseph, 308 N. Y. 259, 263; McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 313). Were the provision so construed the presumption concerning regularity of assessment would be rebut-table (Working v. Amity Estates, 2 N Y 2d 43, 48, app. dsmd. and cert. den. 353 U. S. 933), and would be rebutted by the evidence, above detailed, concerning the tax assessors’ error in locating the southerly line of Lot 110. The court concludes that the provision should not be so construed, however, because section 5-54.0 (subd. b) is a re-enactment of section 93 of the Nassau County Tax Act, and changes in arrangement or in division of a re-enactment will not work a change in its meaning or construction unless the legislative intent to change is manifest (Fifth Ave. Bldg. Co. v. Kernocham, 221 N. Y. 370, 375-376; Davis v. Davis, 75 N. Y. 221; McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 422). Nothing but the change in form itself indicates any intent to change the scope of the conclusive presumption, and the Report of the Board of Statutory Consolidation and Revision of Nassau County (N. Y. Legis. Doc., 1939, No. 104, at p. 46, see, also, pp. 34, 47) states that the legislation *291 prepared by the board with limited (and here inapplicable) exceptions was ‘ ‘ not intended to and * * * does not change the law
Nevertheless, the action cannot be dismissed as barred by limitations on the facts presented by the present papers, for a number of reasons.
The first is that if plaintiff’s rights in the house, which was not included in the assessment of Lot 110, are held to have been extinguished by the tax sale and deed to Lot 110, there would be a taking of property without due process of law (Tax Lien Co. v. Schultze, 213 N. Y. 9; Jackson v. Smith, 153 App. Div. 724, affd. on opn. below 213 N. Y. 630). Not only must the property assessed and the property conveyed on the tax sale be the same (Jackson v. Smith , supra, at p. 727) (which is not true here, the one and one-half story house not having been included in the Lot 110 assessment), but also “ the title of the county for unpaid taxes was no greater than the title of the party against whom the assessment was made” (Hannah v. Baylon Holding Corp., 28 N Y 2d 89, 93; see Middle Is. Land & Water Co. v. Hutner, 259 App. Div. 294, 297). Inclusion of the southernmost quarter and the house thereon, in Lot 110 did not revest Mary E. Conklin with title to it and the tax sale and deed by the county of Lot 110 vested in the tax purchaser the title to only the land and improvements that Mary E. Conklin had title to (Tax Lien Co. v. Schultze, supra; Jackson v. Smith, supra; Addison v. Benedict, 225 So. 2d 335 [Fla.]).
The basis for the conclusion stated being due process, plaintiff could be divested of her title by the tax assessors’ error if she had actual or constructive notice of the error or the subsequent tax proceedings and a means of correcting the error. Means there was, at least until the property was advertised for sale for nonpayment of taxes (Nassau County Administrative Code, § 6-24.0, subds. 4, 5; § 6-28.0). Plaintiff, however, denies actual notice of both the error and the proceedings and cannot be charged with constructive notice of either. Nothing in the statutes authorizing preparation of the tax map (Real Property Tax Law, § 502, subd. 2; § 568; Nassau County Govt. Law, § 603) makes the map anything more than a shorthand method of describing the property assessed (see Nassau County Administrative Code, § 6-7.0). True, the courts will take judicial notice of the map (Wallach Co. v. Rooney, 177 App. Div. 640, 643) and when it describes “ the property of the plaintiff [owner] and none other ” it is sufficient for the purposes of a lawful and effective conveyance of it (Lancaster S.B.I. Co. v. City of New York, 214 N. Y. 1, 9). But constructive notice depends *292 upon whether it is provided for by .some statute (Dunn v. City of New York, 205 N. Y. 342, 353; Jefferson v. Bangs, 169 App. Div. 102, 106, affd. 226 N. Y. 612), and while a property owner is chargeable with notice of the tax assessment record (Dunn v. City of New York, supra; Curnen v. Mayor of City of New York, 79 N. Y. 511) he is only chargeable with notice of what the record itself states and not any underlying error and is not bound to go beyond the record (Gurnen v. Mayor of City of New York, supra, at p. 517). Since plaintiff is not chargeable with notice that Lot 110 included part of her property, she is not chargeable with notice of the tax proceeding relating to Lot 110. It follows that the tax deed could not divest plaintiff’s title to the property in dispute and was as to that property a nullity.
The second reason is that the Statute of Limitations did not begin to run until defendant’s ouster of plaintiff in 1970. Recording of the deed did not start it running, because of the so-called payment rule and because plaintiff, through her tenants, was in continuous occupancy; and the 1963 bar-claim action did not start it running because (as hereafter developed) the complaint was insufficient to give plaintiff notice that a claim of superior title to her property was being made.
It is settled law that a Statute of Limitations, as distinct from a curative act, bars an action to cancel a tax deed, whether the claimed basis for cancellation be an irregularity or a jurisdictional defect in the tax sale (Helterline v. People, 295 N. Y. 245; Robbins v. Abrew, 275 N. Y. 233; Dunkum v. Maceck Bldg. Corp., 256 N. Y. 275; Bryan v. McGurk, 200 N. Y. 332; Halsted v. Silberstein, 196 N. Y. 1; Meigs v. Roberts, 162 N. Y. 371; see Weaver Sons Co. v. Burgess, 7 N Y 2d 172). Nevertheless, if the taxes on a property have in fact been paid, the right to sell the property for nonpayment of taxes never existed, the tax deed is, therefore, a nullity, and the recording of the deed does not set the Statute of Limitations running (Cameron Estates v. Deering, 308 N. Y. 24, 30-31; Bryan v. McGurk, 200 N. Y. 332, supra; Challette, Inc. v. Leeds, 28 A D 2d 717, mot. for lv. to app. den. 20 N Y 2d 647; Zipperer v. Siegel, 27 A D 2d 552, on second appeal 29 A D 2d 868; Middle Is. Land S Water Co. v. Hutner, 259 App. Div. 294, supra; 3 Cooley, Taxation [4th ed.], § 1258; 58 N. Y. Jur., Taxation, § 286), although it appears that the entry into possession of the holder of the tax title will (see Doud v. Huntington Hebrew Congregation, 178 App. Div. 748). Furthermore, it is the rule that when a property owner intends in good faith to pay all of his taxes but fails to do .so because of a mistake in description, the payment will exon *293 erate the entire property and a tax sale of the excluded part will be held invalid (Lewis v. Monson, 151 U. S. 545; Addison v. Benedict, 225 So. 2d 335, supra [Fla.]; Euse v. Gibbs, 49 So. 2d 843 [Fla.]; Conover v. Allison, 178 So. 756 [La.]; Richter v. Beaumont, 67 Miss. 285; Shackelford v. McGlashan, 27 N. M. 454; Arm. 23 A. L. R. 79; Pratt v. Parker, 57 N. M. 103, Smith v. Henley, 53 Wn. 2d 71 [some of which cases are remarkably close on their facts to the instant case] see Ann. 23 A. L. R. 79, notwithstanding the running of the period of limitations, Addison v. Benedict, supra; Euse v. Gibbs, supra; Conover v. Allison, supra; Pratt v. Parker, supra; see Ann. 133 A. L. R. 570; contra: Copian v. Jerome, 314 Mich. 198).
No New York case exactly in point has been found, but the reasoning of Kiamesha Development Corp. v. Guild Props. (4 N Y 2d 378, 387) that it violates due process to deprive an owner of his property by virtue of tax proceedings in which the description of the property is so erroneous as not to give reasonable notice that the property is involved, supports the court’s conclusion that it should follow the cases cited above extending the payment rule to partial payment in good faith and hold that recording of the tax deed to Lot 110 did not give notice sufficient to .start the running of limitations against plaintiff’s claim to that part of her property erroneously included in Lot 110.
Defendant Jablonski argues that the payment rule cannot be applied because the taxes on Lot 110 were never paid. That argument overlooks the fact that what is here in dispute is not Lot 110 but that part of plaintiff’s property erroneously included in Lot 110. For the reasons already discussed plaintiff’s tax payments for Lot 111 were sufficient to exonerate the disputed part of Lot 110 as well. Moreover, the assessment on Lot 111 and, therefore, plaintiff’s tax payments for Lot 111, included the one and one-half story house, and perhaps also the land, owned by plaintiff and erroneously included within the tax map boundaries of Lot 110. Thus, at least a part of the taxes on Lot 110 had in fact been paid. It could, therefore, be argued that, a tax lien being valid or invalid in its entirety (Helterline v. People, 295 N. Y. 245, 251, supra; Middle Is. Land & Water Co. v. Hutner, 259 App. Div. 294, 297, supra), the payment of plaintiff’s taxes on Lot 111 invalidated the tax sale of Lot 110 in its entirety. It is not necessary to go that far, for as noted above, plaintiff is not chargeable with notice concerning the error in assessment; there can, therefore, be no question concerning her good faith and she is, consequently, entitled to the benefit of the payment rule.
*294 The occupancy of the house and the land in dispute is a further reason why the recording of the deed did not start the statute running. Cooley on Constitutional Limitations (8th Ed., Yol. 2, pp. 763-764) states that: “ one who is himself in the legal enjoyment of his property cannot have his rights therein forfeited to another, for failure to bring suit against that other within a time specified to test the validity of a claim which the latter asserts, but takes no steps to enforce. It has consequently been held that a statute which, after a lapse of five years, makes a recorded deed purporting to be executed under a statutory power conclusive evidence of a good title, could not be valid as a limitation law against the original owner in possession of the land. Limitation laws cannot compel a resort to legal proceedings by one who is already in the complete enjoyment of all he claims ”.
Prior to the Cameron Estates case (308 N. Y. 24, supra) the Court of Appeals had many times suggested, without deciding, that there might be a distinction in tax cases between vacant and occupied land (Dunkum v. Maceck Bldg. Corp., 256 N. Y. 275, supra; Peterson v. Martino, 210 N. Y. 412; Bryan v. McGurk, 200 N. Y. 332, 336, supra; Hoisted v. Silberstein, 196 N. Y. 1, supra; People v. Ladew, 189 N. Y. 355, on rearg. 190 N. Y. 543; Meigs v. Roberts, 162 N. Y. 371, supra; Joslyn v. Rockwell, 128 N. Y. 334) and had been careful to note that the land in question in those cases was vacant and unoccupied (ibid., and see Helterline v. People, 295 N. Y. 245, supra). In the Cameron Estates case (supra, p. 31) the court, citing an earlier edition of the Cooley passage quoted above, espoused the principle and declared applicable to tax cases the holding of Ford v. Clendenin (215 N. Y. 10, 17) that “ The owner of real property who is in possession thereof may wait until his possession is invaded or his title is attacked before taking steps to vindicate his right”. Here, as already noted, there was no invasion of possession until the late summer of 1970.
Nor was the 1963 bar-claim action a sufficient attack on plaintiff’s title to start the statute running, for far from stating “ the object of the lawsuit in such a way as to warn her [plaintiff] of the need of a defense ” (Fuhrmarm v. Fanroth, 254 N. Y. 479, 483) the vague and general allegation of the reason for joining plaintiff as a party defendant in that action was insufficient to constitute notice to her that the object of the action was to divest her of title to her property (Peterson v. Martino, 210 N. Y. 412, 420, supra; see Zipperer v. Siegel, 27 A D 2d 552, on second appeal, 29 A D 2d 868, supra; Union & New Haven Trust Co. v. People, 15 A D 2d 1, 5).
*295 A third and final reason why the motion cannot be granted is that defendant’s affidavits do not negate the possibility of an estoppel against pleading the statute, such as was involved in Kemp v. Hunt (268 App. Div. 621, and see decision of Mr. Justice Van Voobhis, as he then was, in the Record on Appeal at folio 425 and following; see, also, Zipperer v. Siegel, supra, and Ann. 50 A. L. R. 668, 870). The possible basis for estoppel against the tax purchaser and his “no consideration ” grantee is outlined below, under the res judicata heading, and nothing in defendant’s affidavits suggests that such an estoppel would not operate against her as well (see 31 C. J. S., Estoppel, § 133, p. 670).
THE BES JUDICATA ISSUE
Generally a final judgment, though not sustained by the evidence or erroneously decided on the law is, nonetheless, conclusive between the parties and their privies (Matter of New York State L. R. Bd. v. Holland Laundry, 294 N. Y. 480, 486; Matter of Holmes, 291N. Y. 261, 269), and a judgment by default is as conclusive as any other (Crouse v. McVickar, 207 N. Y. 213). There is, however, an exception to those rules when a person who has a prior and superior interest to a bar-claim plaintiff is joined as a party defendant. In such a case, unless the complaint clearly sets forth plaintiff’s claim that such defendant’s interest be declared subordinate, the issue concerning defendant’s interest is not tendered in the action and defendant, though he defaults, is not barred (Tax Lien Co. v. Schultze, 213 N. Y. 9, supra; see, also, Pagano v. Arnstein, 292 N. Y. 326; Jasper v. Rozinski, 228 N. Y. 349; King v. Franmor Equity Corp., 260 App. Div. 303, affd. 285 N. Y. 563). Involved in the Tax Lien Co. case (supra) were easements of light, air and access appurtenant to property adjoining the tax lot described in the judgment of tax lien foreclosure. Though the owners of the adjoining property were not necessary parties to the ‘foreclosure action, they were joined, the complaint alleging “ That all of the defendants have or may have and the plaintiff believes that such defendants have or may have an interest in or claim upon the real property hereinafter described by way of lien, mortgage, devise, dower right, purchase, easement, operation of law, inheritance from or marriage with any of the above named defendants or otherwise ” (p. 13, emphasis supplied). The adjoining property owners, having acquired their easements prior to the tax lien, were not subject to it, and despite their default the easements were held not extinguished, the court *296 stating (at p. 12) that “ If property rights which are excluded from an assessment are .sold or extinguished by a tax sale, there would be a taking of property without due process of law ’ ’ and that (at p. 14) “ As the question of the defendants’ having prior and superior easements to the tax lien was not tendered as an issue in the foreclosure action, the defendants are not bound by the judgment therein ’ ’.
Plaintiff Lily Conklin had title to the disputed area that was prior and .superior to the tax lien on Lot 110. She was not, except for the tax assessor’s error in locating the southerly line of Lot 110, even a proper party to the 1963 bar-claim action. The allegation in the complaint in that action was general, the only attempt at particularization being the statement that the interest claimed by defendants other than those named was a fee. That allegation was no more notice to Lily Conklin that the title to her house and part of her land were in dispute than was the reference to “easement” in the Tax Lien Co. case (supra), especially since the complaint served upon her referred to Lot 110 only and made no reference to Lot 111. Since Lily Conklin did not, as did the defendant in Pagano v. Arnstein (supra), litigate the question in the 1963 action, she is not concluded by the judgment entered in that action.
While the rule of the Tax Lien Co. case (supra) is determinative, the court notes that, were it not denying the motion, it would in any event grant plaintiff leave to replead to set forth a cause of action to set aside the 1963 judgment for fraud or excusable mistake. The court has inherent power, not limited by the provisions of CPLR 5015, to set aside a judgment on such grounds, or “ ‘ in the interests of substantial justice ’ ” (Pagano v. Arnstein, 292 N. Y. 326, 331, supra; 755 Seventh Ave. Corp. v. Carroll, 266 N. Y. 157; Crouse v. McVickar, 207 N. Y. 213, supra; Ladd v. Stevenson, 112 N. Y. 325; 5 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 5015.12; 9 Carmody-Wait, Cyclopedia of New York Practice [2d], § 63:163; 20 N. Y. Jur., Equity, § 130 et seq.; Restatement, Judgments, §§ 112-130). That there may be basis for such an action is strongly suggested by the facts that (1) Lily Conklin was joined as a party defendant in the 1963 action though she had no interest in Lot 110, and there was no basis for joining her in the action, except through the error of the tax assessor in locating the southerly line of Lot 110, (2) though plaintiff in the 1963 action was, therefore, apparently aware of the assessment error and of the fact that the one and one-half story house was on Lot 110, his attorney affirmatively represented to the court that Lot 110 was vacant except for a *297 dilapidated house (the 2% story house on the northerly portion) and concealed from plaintiff, by the very general allegations of the complaint the true reason for joining her, (3) notwithstanding the rights ostensibly obtained by the 1963 judgment, the tax lien purchaser and his immediate grantee played possum for six years, while leaving plaintiff in undisturbed possession of both house and land, allowing her to collect the rents and pay the taxes on the house, if not the house and lot, in the evident hope that plaintiff would not discover the tax assessor’s error until the conclusive presumption period had run.