(22 App. Div. 596.)

## ANDRUS et al. v. WHEELER.

(Supreme Court, Appellate Division, Third Department.    December 7, 1897.)

TAX TITLES—VALIDITY—SALES TO STATE.
    Defendant claimed title to the east half of a lot by tax sales of 1881 and
1885. The clerk in the comptroller's office who made the sales testified that
on the mornings of the sales in 1881 and 1885 it was announced that bids
would be rejected on all lands marked in the sale book "For the State";
that in 1881 the whole of said lot was marked "For the State," though the
state owned the west half only; that, if any bids were made upon it, they
were rejected; that in 1885 the lot was not marked in the sale book "For
the State," but there was an entry that the state was the purchaser thereof;
that he did not know whether any bids were made or rejected. *Held*, that
the announcement that lands owned by the state would be bid off, and bids
thereon rejected, was not sufficient to invalidate the sale of 1885, the
lands not being marked as state lands, and there being no announcement
that the state claimed it, and no proof that bids thereon were made or re-
jected.

Appeal from trial term, Franklin county.

Action by Albert E. Andrus and another against William W.
Wheeler. From a judgment for plaintiffs (42 N. Y. Supp. 525) de-
fendant appeals.    Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUT-
NAM, and MERWIN, JJ.

John P. Kellas, for appellant.

Cantwell & Cantwell (W. P. Cantwell, of counsel), for respond-
ents.

PUTNAM, J.    The defendant's title to the land described in the
complaint was derived under the tax sales of 1881 and 1885.    The
learned trial court held that in each of those sales occurred juris-
dictional defects that render the title derived thereunder invalid
and void.    In his opinion he said:

"At the 1881 sale, the state, upon the assumption that it then owned all of
lot 87, rejected all bids therefor, and the whole lot was bid off by the comp-
troller for the state. The state did not then own the east half of lot 87. It did
however, own the west half, and it was the duty of the comptroller, under the
statutes then in force, to reject all bids on that portion of the lot; but as to
the east half he could not legally reject bids. Neither could the state become
a purchaser except by entering into competition with other bidders, and, not
having done this, the sale of the east half to the state constitutes a serious
jurisdictional defect, which is not cured by the statutes of 1885 or 1893."

He finds the same jurisdictional defect in the sale of 1885.

After a careful examination of the evidence, we are of the opinion
that the trial judge inadvertently assumed a state of facts not war-
ranted by the testimony. If either of the sales of 1881 or 1885 was
properly conducted, the state acquired title to the premises in ques-
tion, which it could convey to the defendant, and this action could
not be maintained. To show jurisdictional defects in the sales of
1881 and 1885, the plaintiff called as a witness one Sidney W. Park,
a clerk in the comptroller's office during those years, and who con-
ducted the sales in question. He testified, in reference to the sale
of 1881, that a list of the lots owned by the state was made, and in
the sale book prepared for the occasion those lots were marked,

"For the State," or, where the state owned a portion of such lots, they were marked, "Part State." That in all cases where the state had acquired ownership of lots they were struck off to the state, and other bids thereon were rejected. The following question was asked, and answer given by the witness:

"Q. Was that announcement made every morning,—that on lands marked 'State' all bids would be rejected? A. That all lands owned or claimed to be owned by the state or against which the state held a loan commissioner's mortgage, or a bond for the part payment of a prior purchase, in fact all lands wherein the state was pecuniarily interested, were to be bid off for the state, and that all individual bids made therefor would be rejected. We announced that every morning."

The same announcement was made at the sale of 1885. In the sale of 1881 the lot in question was marked "State," and, although the witness has no recollection whether any bids were made on the lot, he testified that, if any were made, they were rejected. In reference to the sale of 1885, it appears from the testimony of the witness that the lot in question was not marked in the sale book, "For the State." It was not shown that the state, at the time of the sale, made any claim to the lot, or announced that it made such claim. The witness does not know whether or not any bids were made for the lot, or whether any bids were rejected. The following questions were asked, and answers given:

"Q. What do you find on the book to indicate that it was bid off? A. It was entered that the state was purchaser. Q. According to the rules of the comptroller's office, would it have been entered there that the state was the purchaser unless the state had claimed title to it? A. Or unless there were no other bidders."

For all that appears in the case, the premises were put up for sale, no claim to the lot being then made or announced by the state, and, there being no other bidders, was regularly and properly struck off to the state. The announcement made on the morning of the sale that lands owned or claimed by the state would be bid off by it, and bids thereon rejected, was not sufficient to invalidate the sale, the premises in question not being marked in the sale book as state land, and no announcement being shown to have been made that the state claimed the land, and no proof being given that bids thereon were made or rejected. The party seeking to set aside a tax sale made by the officers of the state should show the jurisdictional defects he claims with reasonable certainty. Such a sale should not be vacated on mere conjecture. We therefore conclude the plaintiff failed to show any jurisdictional defect in the sale of 1885, and hence the invalidity of the defendant's title.

The judgment should be reversed, and a new trial granted; costs to abide the event. All concur.