PEOPLE ex rel. FOREST COM. *v.* CAMPBELL. 103

App. Div.]    THIRD DEPARTMENT, NOVEMBER TERM, 1898.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE FOREST COM-
MISSION, Relator, *v.* FRANK CAMPBELL, as Comptroller of the State
of New York, Respondent.    (Nos. 1 and 2.)

*State tax sale — order vacating a sale to the State canceled on condition of the payment
to the alleged owner of amounts paid by him for taxes but not of amounts paid for
improvements.*

On setting aside an order of the Comptroller of the State of New York on the
application of the Forest Commission, which order refused to vacate an order
canceling a State tax sale, at which the State was a purchaser, on the applica-
tion of one claiming to be the owner of the land sold, the Appellate Division
considered that improvements which were of no benefit or use to the State for
the purposes of its forest preserve, but were, on the contrary, detrimental to
it, and were made upon the land by such alleged owner at a time when he
knew that it had been determined in an action at law brought against him by
the State that he had no title, should not be allowed for, but that the amount
paid on the cancellation of the tax sale and the amounts paid for redemptions
and for subsequent taxes should be paid as a condition of the reversal of the
determination of the Comptroller.

WRITS of certiorari issued out of the Supreme Court and attested
respectively on the 21st and 29th days of April, 1892, directed to
Frank Campbell, as Comptroller of the State of New York, com-
manding him to certify and return to the office of the clerk of the
county of Albany all and singular his proceedings in relation to the
cancellation of a tax sale of the southeast quarter of township 24,
great tract 1, Macomb's purchase.

On December 30, 1891, the Comptroller of the State of New York
made an order canceling a tax sale of the southeast quarter of town-
ship 24, great tract 1, Macomb's purchase, had in the year 1877, at
which sale the State bid off the premises.    Such order was made
upon the application of Benton Turner, who claimed to be the owner
of the premises, and it was made conditionally "upon payment of
all the taxes for which the said lands were so sold and all other
taxes that are now a lien upon said lands."    On the next day,
December 31, 1891, Turner paid into the State treasury as and for
such taxes the sum of $6,705.59, and certain other amounts which
then appeared charged against the lands upon the Comptroller's
books.

On April 2, 1892, the Forest Commission, on behalf of the State,

**104** PEOPLE ex rel. FOREST COM. *v.* CAMPBELL.

THIRD DEPARTMENT, NOVEMBER TERM, 1898. [Vol. 35.

made application to the Comptroller to set aside such order of cancellation upon certain grounds then stated. Such application was made under chapter 120 of the Laws of 1873, and was denied by the Comptroller, one of the grounds of the denial being that no notice of the application had been given to the parties interested in maintaining the cancellation. On the 12th of April, 1892, the Forest Commission made a second application to the Comptroller under said statute, asking that the said order of cancellation be set aside. After a hearing had upon such application, Comptroller Campbell denied the application. On April twenty-first and twenty-ninth, respectively, on the relation of the Forest Commission, two separate writs of certiorari were allowed by a justice of the Supreme Court, one to review the decision of Comptroller Wemple, who had made the order of December 30, 1891, and the first decision of Comptroller Campbell in refusing to vacate it; the second to review both the order of Comptroller Wemple, made December 30, 1891, and the second order of Comptroller Campbell refusing to vacate the same. Both of these writs were quashed by the General Term in the third department on the ground that the Forest Commission had no authority to sue out the same. Such decision having been reversed by the Court of Appeals, the cases were remitted to the Appellate Division. The Appellate Division decided that the writs should be quashed upon the ground that, under the circumstances, it would be inequitable to sustain them. The Court of Appeals having reversed this decision, the cases are again before the Appellate Division to be heard and determined.

For prior decisions in these cases, see *People ex rel. Forest Commission* v. *Campbell* (82 Hun, 338; 152 N. Y. 51; 22 App. Div. 170; 156 N. Y. 64).

*William P. Cantwell*, for the relator.

*Frank E. Smith*, for the respondent.

MERWIN, J. :

The only remaining question to be considered in these cases is, what direction shall be given or condition imposed by way of restitution to Benton Turner, for whose benefit these proceedings are defended, for moneys paid by him into the treasury of the State or laid out on the premises in question.

The cancellation of December 30, 1891, was made upon the condition that "all the taxes for which the said lands were so sold, and all other taxes that are now a lien upon said land," should be paid.

It appears that on December 31, 1891, Benton Turner paid into the State treasury the sum of $9,538.21. This, as indicated by the papers submitted to us on the subject of restitution, was made up as follows :

| | |
|---|---:|
| Taxes of 1866, 1867, 1868, 1869, 1870, for the non-payment of which the land had been sold in 1877, with interest to December 31, 1891.................... ...... | $2,128 47 |
| Taxes of 1861, 1862, 1863, 1864, 1865, for the non-payment of which the land had been sold at the tax sale of 1890, with interest to December 31, 1891........ | 6,705 59 |
| Taxes of 1886, 1887, 1888, 1889, 1890, with interest to December 31, 1891 ....................... ..... | 704 15 |
| Total ................................. | $9,538 21 |

At the tax sale of 1890, above referred to, the property was bid in by the State and a certificate issued to it. This certificate was, on December 31, 1891, assigned by the Comptroller to Smith M. Weed, and at the same date an assignment thereof made by Weed to Julia H. Turner. On the back of this assignment, as certified from the Comptroller's office, it is noted that a conveyance was made to Julia H. Turner December 29, 1892.

On the 8th day of May, 1886, Mr. Turner, through his attorney, paid into the State treasury the sum of $1,306.30 for redemption of the premises from the tax sale of 1881 made for the taxes of the years 1871 to 1876. On December 27, 1887, he paid into the treasury the sum of $1,124.61 for redemption of the premises from the tax sale of 1885 made for the taxes of 1877, 1878, 1879 and for 1853, 1854 and 1855.

An affidavit of Mr. Turner is presented in which it is stated that after the cancellation of December 30, 1891, he, believing his title perfect, entered upon the land and made preparation for extensive lumbering operations, building a dam across Cold brook at an

expense of $3,500, building sluice ways and improving the brook to make it available for running logs at an expense of $3,000, building several camps, barns and other buildings for use in lumbering business at an expense of $5,350, building roads and bridges at an expense of $1,500 ; that these buildings and improvements are practically useless to him except for the purpose of utilizing the timber on said premises, except that the main camp was to some extent used in aid of the lumbering operations on an adjoining tract, township 27, owned by him ; that in June, 1892, after this expense was incurred, an injunction was served upon him on behalf of the State restraining him from entering on the land.

On the part of the relator an affidavit of Cyrus F. Whitney, a civil engineer, is presented in which it is in substance stated that he is familiar with the lands in question and with lumbering ; that the improvements mentioned by Turner were made long before December 31, 1891, and for the purpose mainly of lumbering on Turner's adjoining tract, and many of the buildings are on that tract ; that the cost of the buildings is largely overstated and many of them are now rotted down.

It also appears on behalf of the relator that, on the 6th of June, 1891, the People of the State recovered judgment against Turner for $2,198.60.   On the affirmance of this at General Term a further judgment was recovered against Turner for $72.04 May 18, 1894, and on the affirmance of this by the Court of Appeals, a further judgment of $151.75 on February 17, 1898.   These judgments are shown to be unpaid.   The recovery in the original judgment was for the value of logs taken by the defendant therein from the premises in question about March 1, 1887.   It is not suggested by the relator that Turner has taken any other timber or had any other use of the property that should be considered on the question now before us.

The defendant, or rather Turner through the defendant, claims that, as a condition of the reversal of the determination of the Comptroller, the amount paid by him on December 31, 1891, being the sum of $9,538.21, should be restored to him.   Before Turner is in a position to ask this, he should restore to the State all the rights it had under the certificate given to it on the 1890 sale so that there will be no outstanding claim against the State or the property by

PEOPLE ex rel. FOREST COM. *v.* CAMPBELL. 107

App. Div.]       Third Department, November Term, 1898.

reason of the transfer of that certificate or any conveyance that may have been given thereunder.

Such restoration being made, Turner then would be in a position to ask that the money that he paid December 31, 1891, be paid back to him upon the reversal of the Comptroller's determination.

It is also claimed on behalf of Turner that he should be reimbursed for his expenses for improvements, as stated in his affidavit. This is on the theory that he made the expenses after December 31, 1891, in the belief that his title was perfect. It is denied that they were made after that date. If made at the time he says, he knew then that it had been determined in an action at law against him by the State that he had no title, and it can hardly be said that, under the circumstances appearing in the case, he had a right to suppose that the relator would acquiesce in the action of the Comptroller upon December 30, 1891. Beyond this it is quite apparent from the affidavit of Mr. Turner himself that the improvements described by him were and are of no benefit or use to the relator or the State for the purposes of its forest preserve, but, on the contrary, detrimental to it. The State has received nothing by reason of such expenses. I fail to see any good reason for our considering those expenses upon the subject of restitution.

The amounts paid by Turner on May 18, 1886, and December 27, 1887, for redemption from tax sales of 1881 and 1885, stand on a different basis. The deed to the State upon the tax sale of 1877, which is restored by a reversal of the determination in question, was given prior to such tax sales. If the deed was good and operative the State, upon the sales in 1881 and 1885, was selling its own property, and Turner by redeeming got nothing.

We, therefore, reach the following conclusions :

The determination of the Comptroller should be reversed, with costs, unless, within sixty days after the entry of the judgment herein and service of a copy thereof on the defendant's attorneys, the defendant's attorneys file with the clerk of this court, for delivery as directed by the court, and serve on the attorneys for relator, an instrument or instruments duly executed, which shall operate to transfer and restore to the State any and all right or interest which it parted with by reason of the transfer of the certificate of the 1890 tax sale, or any conveyance thereunder.

In case such instruments are so filed and served, then such reversal is made upon the condition that, within ninety days after the filing and service of said instruments, the relator deposit or cause to be deposited in court, subject to the order of this court, for the benefit of said Benton Turner or his assigns, the said sum of $9,538.21, with interest thereon to the time of such deposit. Also the said sums of $1,306.30 and $1,124.61, with interest from their respective dates of payment, less the said three judgments.

Upon such deposits being made, then the said reversal shall be absolute, and the instrument or instruments above referred to shall be delivered to the relator for the State, and the said moneys shall, upon application, be paid to said Turner or his assigns.

In case such deposit is not made within said time, or such further time as may be given by this court upon proper application at the foot of the judgment, then the writs of certiorari shall be quashed.

All concurred.

Judgment ordered in accordance with opinion, to be settled before the court upon notice.