Laughlin, J. :
This is an action of conversion to recover the value of a quantity of pulp wood removed from a tract of 600 acres of land in Forest-port, Oneida comity. Plaintiff cut the wood, but was forbidden to remove the same by the assistant chief fish and game protector and forester, who thereupon sold it to parties who removed it, and subsequently sold and delivered it to the defendants at Port Leyden,about eleven miles distant. The principal question presented for our consideration is as to whether the lands from which the timber was cut were owned by plaintiff or by the People of the State of New York. The claims of each are based solely upon tax titles. At a. tax sale in October, 1877, by the Comptroller, pursuant to chapter 427 of the Laws of 1855, for default in payment of taxes levied prior to the year 1871, the lands in question then owned by non-residents were bid in by the Comptroller and a certificate of sale thereof was duly made pursuant to section 66 of said act. The lands not having been redeemed from such sale, the State presumptively became entitled to a deed at the expiration of two years thereafter. A Comptroller’s deed, pursuant to said tax sale, was subsequently, but not until the 28th day of March, 1881, executed to the People of the State, and the same was recorded in the clerk’s office of Oneida county on the 30th day of June, 1882. By the express provisions of sections 63 and 66 of said act, this deed vested in the State “ an absolute estate in fee simple, subject, however, to all the claims which the People of this State may have thereon for faxes or other liens or encumbrances.” Section 65 made the deed presumptive evidence of the regularity of the sale and of all prior proceedings. This section was amended by chapter 448 of the Laws of 1885, making, after the lapse of six months, conveyances theretofore executed by the Comptroller or by his grantee, which have been recorded, conclusive evidence of the regularity of the sale and of aE prior proceedings, including the giving of notices to redeem, subject only to a direct application to the Comptroller for cancellation of such deed as then provided by law, and to an action for similar relief on the ground- of payment <or that the tax was levied without legal right. Such amendment, however, was not made applicable to Comptroller’s sales of lands in Oneida county untü 1891, at which time it was also made applicable to tax *486 sales made by county treasurers. (Chap. 217, Laws of 1891.) Section65 of the act of 1855, to which reference has been made, was repealed by chapter 711 of the Laws of 1893, section 12 of which provided that every conveyance theretofore made by the Comptroller or county treasurer, and by either of their grantees, which had been recorded in the clerk’s office of the county in which the lands were located, should be “ conclusive evidence that the sale and proceedings prior thereto, from and including the assessment of the lands, and all notices required by law to be given previous to the expiration of the time allowed for redemption, were regular and were regularly given, published and served according to the provisions of all laws directing and requiring the same or in any manner relating thereto,” subject, however, to cancellation on a direct application to the Comptroller or in an action brought therefor, on the ground that such taxes had been paid, or that the same were levied without legal right or for any defect in the proceeding affect ing the jurisdiction upon constitutional grounds. This section was substantially re-enacted in section 132 of the Tax Law (Chap. 908, Laws of 1896), which repealed the Oneida county special act of 1880 (Chap. 91), and added a further clause providing that such application should be made, or such action be brought, in the case of sales prior to 1895, within one year after that enactment. If the lands were actually occupied at the expiration of the redemption period, section 68 of the act of 1855 required the purchaser, after receiving but before recording the Comptroller’s deed, to give notice to such occupant of a further opportunity to redeem, and in such case it required that proof of compliance therewith accompany the deed to entitle it to be recorded. There is no evidence that these premises, which were wild forest lands, were so occupied. The burden rests upon the party seeking to avoid a tax sale or deed to show jurisdictional defects with reasonable certainty. The Comptroller’s tax deed, although accompanied by no proof as to whether the lands were or were not occupied, was presumptively regularly recorded, and it was incumbent on plaintiff to show actual occupancy if such were the fact. (Andrus v. Wheeler, 22 App. Div. 596; Stewart v. Crysler, 100 N. Y. 378, 385 ; People v. Turner, 145 id. 451; Meigs v. Roberts, 162 id, 371; Laws of 1890, chap. 556; Tax Law, §§ 132, 134; Laws of 1893, chap. 711.)
*487 Subsequent to the Comptroller’s sale, but prior to’ the execution of his deed to the State, an. act was passed entitled, “ An Act to enforce collection of the taxes levied in the county of Oneida” (Chap. 91, Laws of 1880), the effect of which was to provide that the tax sales for .taxes assessed upon lands within said county should be made thereafter by the county treasurer instead of by the Comptroller of the State as theretofore. By the terms of said act, when the purchaser became entitled to a deed by failure to redeem within one year, as therein provided, the county treasurer was required (§ 9) to execute a conveyance of the lands which should “ vest in the grantee an absolute estate in fee.” Section 10 of this act, as amended by chapter 8'of the Laws of 1881, further provided that the conveyance should be conclusive evidence of the regularity of the sale, and presumptive evidence of the regularity of all prior proceedings. This special act contained no express reservation in favor of the State of the lien of taxes previously assessed, such as was provided by section 63 of the act of 1855 herein quoted. In 1880 the premises were assessed as non-resident lands and sold by the county treasurer, pursuant to the Oneida act, on the 18th day of August, 1881, after the deed had been executed to the State,, but before it had been recorded. On the 12th day of December, 1882, the county treasurer executed a deed to the purchaser at such sale, which was recorded on the same day. Subsequently, and prior to the cutting of the timber in question, plaintiff obtained a deed of the premises from such purchaser.
An interesting question arises as to whether these lands were assessable in 1880, after the State- became the equitable owner and entitled to a deed by reason of the non-redemption from the tax sale of October, 1877. (1 R. S. 388, § 4; People ex rel. Mayor v. Assessors, 111 N. Y. 505; and note, 2 Law. Rep. Ann. 148; Tracy v. Reed [U. S. Cir. Ct.], 2 Law. Rep. Ann. 773.) However that may be, we are of opinion that the tax sale made by the county treasurer under the Oneida county act was subject to the prior vested rights of the People of the State. (Board of Regents v. Hamilton, 28 Kan. 376; Reid v. State ex rel. Thompson, 74 Ind. 252; Buckley v. Osburn, 8 Ohio, 180; Braxton v. Rich, 47 Fed. Rep. 178; People ex rel. Forest Commission v. Campbell, 35 App. Div. 103; 152 N. Y. 51; 156 id. 64.) The policy of the law is to *488 enforce payment of the taxes by the owner or those having private liens upon or' an interest in the premises derived from the owner by foreclosing, and cutting off his and their rights upon default in the payment of the taxes, and by failure to redeem from a tax sale. Not so, however, as to the lien of the People of the State, which is the only means of enforcing a just contribution to the public burden by those owning or interested in the lands (Trustees of Public Schools v. City of Trenton, 30 N. J. Eq. 667; Tifft v. City of Buffalo, 9 N. Y. Supp. 920; Chard v. Holt, 136 N. Y. 30, 45 ; Cooper v. Bushley, 72 Penn. St. 252.) It may be and doubtless is competent for the Legislature to relieve taxable lands from the lien of old taxes, without the payment thereof ; but it is not reasonable to suppose that the Legislature would do so without making provision for the reassessment of such taxes. An examination of the Oneida county act discloses no evidence from which a legislative intention to waive the rights of the People to existing liens for taxes or the vested rights of the People to tax deeds of lands in that county can be inferred. We,find in that act no new method for levying taxes and no provision for reassessing old taxes. It merely provides that tax sales in the future shall be made at home instead of at the Capitol. At the time of the sale by the county treasurer, the State had become the légal owner of the premises and was constructively at least in possession thereof. (People v. Turner, 145 N. Y. 451, 461; Meigs v. Roberts, 162 id. 371.) Inquiry or search at the Comptroller’s office would have disclosed the interest and title of the State. The purchaser at the tax sale was-not justified in assuming that the State had no lien, upon or claim against the premises and he is chargeable with knowledge of its title, which a reasonable inquiry would have revealed. (Anderson v. Blood, 152 N. Y. 285; Moot v. Business Men’s Investment Assn., 157 id. 201.) A tax. deed contains no warranty or guaranty. It is in effect a quitclaim deed. When the county treasurer executed the deed to plaintiff’s grantor, the deed to the People of the State was on record and both he and the purchaser were chargeable with notice of the rights of the State, which-rights could not be cut off by this subsequent assessment, tax sale and deed.' Section 12 of the Oneida county act, by express terms, makes the provision of section 83 of the act of 1855 applicable to sales by the county treasurer. The latter section *489 provides that if the Comptroller, prior to executing a tax deed, discovers that the sale was invalid, he shall withhold the deed, cancel the sale and refund the money to the purchaser. Plaintiffs grantor, instead of taking the deed from the county treasurer, could have received back his money pursuant to this statute, and failing to adopt that course, he took the county treasurer’s deed at his peril and obtained no title as against the State.
These views require a reversal of the judgment and the granting of a new trial, with costs to appellant to abide the event.
Adams, P, J., and Spuing, J., concurred; McLennan, J., dissented • Williams, J., not sitting.
Judgment and order reversed and new trial orderéd, with costs to the appellant to abide event.