(66 Misc. Rep. 634.)

HENNEPIN IMPROVEMENT CO. v. SCHUSTER et al.

(Supreme Court, Equity Term, Erie County. March, 1910.)

1. EJECTMENT (§ 9\*)—TITLE TO SUPPORT ACTION.
    Plaintiff in ejectment must show title in himself, and cannot recover upon the weakness of defendant's title.
    [Ed. Note.—For other cases, see Ejectment, Cent. Dig. § 18; Dec. Dig. § 9.\*]

2. TAXATION (§ 698\*)—SALE FOR TAXES—MORTGAGED PROPERTY—RIGHTS OF MORTGAGEE.
    Laws 1855, c. 427, § 76, relating to collection of taxes on lands of non-residents, and to provide for the sale of such lands for taxes, provides that the sale of premises for nonpayment of taxes shall not affect the lien of a mortgage thereon duly recorded at the time of the sale, except as therein provided. Section 77 makes it the duty of the purchaser at a tax sale to give the mortgagee written notice of the sale, requiring him to pay the purchase money with interest. Section 82 provides that the notice need only be given to such persons as shall within two years from the sale file in the Comptroller's office a notice stating the names of the mortgagor and mortgagee, and the date and amount claimed to be due on the mortgage with the name of the persons claiming notice, etc., and provides that if such notice be not filed with the Comptroller within two years, then the mortgagee or other person shall be barred from all claim to redemption by virtue of such mortgage, and that the purchaser's title shall become valid, as if the mortgage had not existed. *Held* that, where land incumbered by mortgage was sold by the Comptroller in February, 1881, for taxes levied in 1871, purchased by the people and conveyed to them on October 31, 1884, by the Comptroller, and the holder of the mortgage failed to file the notice with the Comptroller required by section 82, the lien of the mortgage was discharged as to the people and their grantees, and their rights were not affected.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1401; Dec. Dig. § 698.\*]

3. TAXATION (§ 707\*)—SALE FOR TAXES—NOTICE TO REDEEM—RECORDING OF EVIDENCE OF SERVICE.
    Section 68 of the act (Laws 1855, c. 427) requiring that evidence of service of notice to redeem should be recorded with the deed, is satisfied by recording the certificate of the Comptroller that it appeared to his satisfaction that the people had caused the notice required by section 68 to be served pursuant to the act upon a certain company as occupant of the premises, and had caused a copy of the notice, with affidavit of service thereof as required by the act, to be filed with the Comptroller, and the recording of the affidavit is not necessary.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1426, 1427; Dec. Dig. § 707.\*]

4. TAXATION (§ 707\*)—SALE FOR TAXES—NOTICE TO REDEEM—CERTIFICATE OF SERVICE.
    Such certificate is sufficient if made by the Deputy Comptroller under the seal of the office, though it do not appear that the Comptroller was absent from the state, disabled from acting, or that there was a vacancy in the office; the statute in force at the time (1 Rev. St. [7th Ed.] pt. 1, c. 8, tit. 3, § 18) giving the same power to the deputy in such regard as the Comptroller.
    [Ed. Note.—For other cases, see Taxation, Dec. Dig. § 707.\*]

5. TAXATION (§ 805\*)—SALE FOR TAXES—LIMITATION.
    Laws 1855, c. 427, § 65, as amended by Laws 1885, c. 448, providing that conveyances of land sold for taxes by the Comptroller, and all conveyan-

ces of the same land by his grantees therein named, after having been recorded for two years in the office of the clerk of the county in which the lands are located, shall, six months after the act takes effect, be conclusive evidence that the sale and all proceedings prior thereto, including assessments and notices required by law to be given previous to the expiration of the two years allowed for redemption, were regular, and according to law, was operative as a short statute of limitation, and barred any action commenced after expiration of six months from passage of the act, and a like period from the time when the grantees claiming under the tax deed took possession of the premises.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 805.*]

6. TAXATION (§ 421*)—SALE FOR TAXES—DESCRIPTION OF PROPERTY.

The description of farm lands. part of a subdivided tract, in the assessment and in subsequent proceedings leading up to a tax sale, as part of a lot known by a designated number and bounded by adjoining owners, was sufficient, though the line of the owner bounding on one side did not extend along the entire side of the premises, part of that side of the premises being a prolongation of the boundary line of the adjacent owner named in the description as bounding the premises on that side.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 720–735; Dec. Dig. § 421.*]

7. TAXATION (§ 734*)—SALE FOR TAXES—COMPLIANCE WITH STATUTE.

In proceedings to sell land for taxes, the statutory requirements, strictly construed, must be substantially complied with to divest the owner of his title.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1470–1473; Dec. Dig. § 734.*]

Action by the Hennepin Improvement Company against Casper Schuster and another. Complaint dismissed.

Frank F. Williams, for plaintiff.
Norris Morey, for defendants.

LAUGHLIN, J. The plaintiff is a domestic corporation, and it claims title and the right to possession of the premises in question, which consist of a tract of 50 acres of land in the town of Hamburg in the county of Erie, by virtue of a deed of a referee given on the foreclosure of a mortgage on the premises executed by William Clyde and wife to the Erie County Savings Bank on the 12th day of January, 1869. The purchaser at the foreclosure sale assigned his bid to the plaintiff and the referee executed the deed to it. The mortgagors, when they executed the mortgage, were in possession claiming title under a deed. When the action was commenced, the defendants were in possession claiming title by virtue of a certificate of sale, made by the State Engineer and Surveyor, on a sale of the right, title and interest of the people of the state of New York acquired by a deed executed to them by the Comptroller on the 31st day of October, 1884, on a sale of the premises in the month of November, 1881, for the nonpayment of the annual tax levied thereon in the year 1871, amounting to $8.60.

It is elementary law that it is incumbent on the plaintiff in an action in ejectment to show title in himself, and that he cannot recover on account of the weakness of the defendant's title. In the circum-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

stances, the mortgagors presumptively had good title. It does not follow, however, that the purchaser on the foreclosure sale acquired it. The people of the state were not made parties to the action, but those claiming under them were.

Section 76 of chapter 427 of the Laws of 1855, entitled "An act in relation to the collection of taxes on lands of nonresidents, and to provide for the sale of such lands for unpaid taxes," being the act under which the tax sale was made, provides that the sale of the premises for the nonpayment of any tax or assessment shall not destroy or in any manner affect the lien of a mortgage thereon "duly recorded or registered at the time of such sale," except as thereinafter provided; and section 77 of the act makes it the duty of the purchaser at the tax sale to give to the mortgagee a written notice of the sale, requiring him to pay the purchase money with interest as therein provided. Section 82 of the act provides, so far as material to the questions here presented, that the notice need only be given "to such persons as shall within two years from the time of such sale file in the office of the Comptroller a notice stating," among other things, the names of the mortgagor and mortgagee, and date and amount claimed to be due on the mortgage, "with the name of the person or persons claiming notice, their residence, and the post office to which such notice shall be addressed," and provides that, if such notice be not filed with the Comptroller within two years, "then said mortgagee or other person shall be barred from all claim to redemption by virtue of said mortgage, and the title of the purchaser shall become valid and effectual the same as if such mortgage had not existed." No notice was filed with the Comptroller as required by this statute. It is claimed on the part of the defendants that failure to file the notice barred any right on the part of the mortgagee to redeem the premises from the tax sale or to contest the title derived by them thereunder through the people of the state. The land board duly sold the right, title and interest acquired by the state by virtue of the Comptroller's deed, to Barbara Schuster; and, on the 8th day of February, 1888, the State Engineer and Surveyor duly executed and delivered to her under his hand and seal a certificate of such sale, pursuant to the provisions of law applicable thereto. She died intestate, without having conveyed the premises, and her heirs were made parties defendant in the foreclosure action and were duly served. They interposed the tax title as a defense, and claimed that their rights could not be adjudicated in that action. They were unsuccessful on the trial; but their contention was sustained by the Appellate Division and by the Court of Appeals, and the judgment of foreclosure and sale was reversed and the complaint was dismissed as to them. Prior to the commencement of this action, the defendants succeeded to the rights of the Schuster heirs under the tax sale and certificate executed by the State Engineer and Surveyor.

Many legal questions have arisen on the trial of this action, and they have been presented and argued with conspicuous ability; but I do not deem it necessary to discuss or to express a decided opinion on all of them. I have, however, with a view to rendering a new

trial unnecessary, should the court on appeal disagree with the views here expressed, made findings on every proposition of fact which would be material to a decision of the case on any theory advanced; and, therefore, I trust that, if necessary, the conclusions of law may be changed without requiring a new trial.

I desire to say at the outset that I have not followed the express testimony of certain witnesses with respect to the dates of interviews between John Zollitch, claimed by plaintiff to have been in actual possession and entitled to notice to redeem, and one Henry C. Springer, for the reason that I am convinced, by the fact that Springer had no title at the time it is claimed that the interview took place, although he asserted during the interviews that he owned the property, and from other facts and circumstances developed by the evidence, that the witnesses are mistaken with respect to the times of the interviews and that they took place after Springer obtained title and during the time that he, or his wife, or Lillian M. Best for her, held title; and, with respect to the use and occupancy of Zollitch prior to 1886, the evidence is indefinite and unsatisfactory and I deem it improbable that he planted or sowed crops or cultivated the premises or made any use thereof prior to the time when he had authority to do so, which was after the year 1885, excepting use of a strictly temporary nature, such as pasturing, picking apples and repairing wagons thereon, which could be discontinued and abandoned on complaint.    It may not be very material whether Springer attempted to authorize Zollitch to use the premises during the years 1883, 1884, and 1885, or to what extent Zollitch did use or occupy the same; for, in any event, inasmuch as there was no authority from the owner, he would be a mere trespasser or squatter; and it may be that such occupancy would not be "actual occupancy," entitling him to notice to redeem within the legislative intent, as those words are used in section 68 of said act; for it is evident that the occupancy there referred to is such occupancy as during its existence would require that the premises be assessed to the occupant, the owner being a nonresident of the town (People ex rel. Marsh v. Campbell, 143 N. Y. 335, 38 N. E. 300; People v. Turner, 145 N. Y. 451, 461, 40 N. E. 400; People v. Ladew, 189 N. Y. 355, 82 N. E. 431, s. c. on reargument 190 N. Y. 543, 82 N. E. 1092; People ex rel. Chase v. Wemple, 144 N. Y. 478, 39 N. E. 397; Comstock v. Beardsley, 15 Wend. 348); but on this point the earlier decisions are to the effect that the occupancy need not be under a claim of right (Jackson v. Esty, 7 Wend. 148; Brush v. Davison, 16 Wend. 550; Lucas v. McEnerna, 19 Hun, 14), and I do not deem it necessary to decide the question.

The lien of the mortgage upon the premises was discharged, as to the people and their grantee under the tax sale, by a failure to file the notice with the Comptroller required by section 82 of said act. Chard v. Holt, 136 N. Y. 30, 32 N. E. 740. The learned counsel for the defendants further contends that, owing to the failure to file the notice with the Comptroller, the lien of the mortgage upon the land was discharged, and that in no event could plaintiff, by the foreclosure deed, obtain any right, title, or interest other than such as the mort-

gagors had at the time the mortgage was executed; and he relies on the provisions of section 1632 of the Code of Civil Procedure and on Rector v. Mack, 93 N. Y. 448, 45 Am. Rep. 260, in support of the latter proposition. I am of opinion that plaintiff succeeded to the right, title, and interest of the mortgagors, including whatever right they had to question the tax title; but it doubtless did not acquire any right that any other defendant in the foreclosure action had to question the tax title.

At the time the tax which resulted in the sale was levied upon the premises, they were owned by three tenants in common who were nonresidents of the town. It does not appear that the premises were occupied at the time, and the case has been tried upon the theory that they were not. It is conceded that the assessment was made upon the theory that the premises were owned at the time by nonresidents of the town; but it is contended by the plaintiff that the assessment was void for the reason, as it claims, that they were assessed as resident lands in the name of one of the owners. It appears that they were not assessed in that part of the roll containing the assessments of lands owned by residents of the town in the alphabetical order of the names of such residents, but were assessed at the end of the roll, following an assessment against a railroad corporation; and it is contended in behalf of the defendants that the name of one of the owners was inserted by way of description. The statute required that the lands of nonresidents should be designated in the same assessment roll with the lands of residents "but in a part thereof separate from the other assessments" (1 Rev. St. [5th Ed.] pt. 1, c. 13, tit. 2, art. 2, § 11, p. 910), and in the requirements of the statute with respect to the entry to be made in the assessment roll concerning such lands there was no provision for inserting the name of the owner, but, on the contrary, it was plainly contemplated that the name should not be inserted. 1 Rev. St. (5th Ed.) pt. 1, c. 13, tit. 2, art. 2, §§ 12, 13, pp. 910, 911. Were it not for the curative act of the Legislature to which reference will presently be made, the assessment would be void on account of this insertion of the name of one of the owners; for it left the assessment open to the construction that it was intended thereby to subject the owner to personal liability, which could not be done as to a nonresident. Sanders v. Downs, 141 N. Y. 422, 36 N. E. 391; Stewart v. Crysler, 100 N. Y. 378, 3 N. E. 471; Schreiber v. Long Island Railroad Co., 127 App. Div. 286, 111 N. Y. Supp. 123.

On the tax sale the lands were sold to the people of the state. Section 66 of said act, so far as material to the questions to be decided, provided that, if lands thus sold to the state "shall not be redeemed, the Comptroller shall execute a release therefor to the people of this state, or their assignees, which shall have the same effect, and become absolute in the same time, and on the performance of the like conditions, as in the case of sales and conveyances to individuals." Section 50 of the act provided that the owner or occupant of the land "or any other person" might redeem the same as therein provided, at any time within two years after the last day of the sale, by paying to the Comptroller for the use of the purchaser, his heirs or assigns, the sum mentioned in the Comptroller's certificate, together with 10 per

cent. per annum from the date thereof. No one attempted to redeem, and, therefore, it is not necessary to consider who had the right to and might have redeemed. Section 61 provided that the Comptroller should, at least six months before the expiration of the two years allowed for redemption, publish a notice in each county as therein provided with respect to the lands therein sold for taxes and unredeemed, stating, among other things, that, unless the lands should be redeemed by the date specified in the notice, they would be conveyed to the purchaser. Section 63 provided that, if the premises should not be redeemed within the two years, the Comptroller should, at the expiration thereof, execute to the purchaser, his heirs or assigns, in the name of the people, a conveyance thereof, which should vest in the grantee "an absolute estate in fee simple; subject, however, to all the claims which the people of this state may have thereon for taxes or other liens or incumbrances." By virtue of the provisions of section 66 of said act, this section was made applicable to cases where the premises were, as here, struck off to the people of the state on the tax sale. Section 65, as originally enacted, provided that the conveyance should be executed by the Comptroller under his hand and seal, and that its execution should be witnessed by the Deputy Comptroller, Surveyor General, and Treasurer, and that all such conveyances thereafter executed should be presumptive evidence "that the sale, and all proceedings prior thereto, from and including the assessment of the land, and all notices required by law to be given previous to the expiration of the two years given to redeem, were regular, according to the provisions of this act, and all laws directing or requiring the same, or in any manner relating thereto." This section was amended by chapter 448 of the Laws of 1885 to read as follows:

"Such conveyances shall be executed by the Comptroller under his hand and seal, and the execution thereof shall be witnessed by the Treasurer or Deputy Comptroller, and all such conveyances that have been heretofore executed by the Comptroller, and all conveyances of the same lands by his grantee or grantees therein named, after having been recorded for two years in the office of the clerk of the county in which the lands conveyed thereby are located, and all outstanding certificates of a tax sale heretofore held by the Comptroller that shall have remained in force for two. years after the last day allowed by law to redeem from such sale shall, six months after this act takes effect, be conclusive evidence that the sale and all proceedings prior thereto, from and including the assessment of the land and all notices required by law to be given previous to the expiration of the two years allowed by law to redeem, were regular and were regularly given, published and served according to the provisions of this act, and all laws directing or requiring the same, or in any manner relating thereto, and all other conveyances or certificates heretofore or hereafter executed or issued by the Comptroller, shall be presumptive evidence of the regularity of all the said proceedings and matters hereinbefore recited, and shall be conclusive evidence thereof from and after the expiration of two years from the date of recording such other conveyances or of four years from and after the date of issuing such other certificates. But all such conveyances and certificates and the taxes and tax sales on which they are based, shall be subject to cancellation as now provided by law, on a direct application to the Comptroller or an action brought before a competent court therefor, by reason of the legal payment of such taxes or by reason of the levying of such taxes by a town or ward having no legal right to assess the land on which they are laid."

That amendment, however, as originally enacted, was, by virtue of section 2 of the act, confined to certain counties which did not embrace the county of Erie; but, by virtue of chapter 217 of the Laws of 1891, section 2 of the amendatory act was amended, so far as material to the questions now presented for decision, so as to read as follows:

"The provisions of this act are hereby made applicable to all the counties of the state except the counties of Cattaraugus and Chautauqua, but shall not affect any action, proceeding or application pending at the time of its passage; nor any action that shall be begun, proceeding taken or application duly made within six months thereafter for the purpose of vacating any tax sale or any conveyance or certificate of sale made thereunder."

There being no proof to the contrary, it is to be presumed that the Comptroller duly published the notice to redeem as required by the statute. It appears by the evidence that the Comptroller attempted to have a personal service made upon the owner or occupant of the premises of notice to redeem, and that notice to redeem, addressed to the Buffalo & Jamestown Railroad Company, was served upon Mr. Brunn, who had been assistant superintendent of that railroad company, which acquired a right of way through the farm after the tax was levied; and was superintendent of the Buffalo & Southwestern Railroad Company, which, under proceedings in the foreclosure action, succeeded to the right, title and interest of the Buffalo & Jamestown Railroad Company; and was division superintendent of the New York, Lake Erie & Western Railroad Company, which, at the time of the service of the notice, was the lessee of that part of the premises in question so acquired for railroad purposes. It also appears that Surveyor Witmer was employed by the state to visit the premises and serve notice to redeem on any one occupying the same. It is shown by his affidavit, duly filed in the office of the Comptroller of the State, pursuant to law, that he served the notice upon the Buffalo & Jamestown Railroad Company, and that after diligent examination he found no other person occupying any part of the premises. On this affidavit being filed, the Deputy Comptroller made a certificate, as required by law, certifying that it appeared to his satisfaction that the people had caused such a notice as is required by section 68 of said act to be served pursuant to the act upon the Buffalo & Jamestown Railroad Company as the occupant of the premises and had caused a copy of the notice, together with an affidavit of service thereof, as required by the provisions of section 72 of the act, to be filed in the office of the Comptroller of the State, on the 14th day of November, 1885; "and that this certificate is made, and that I am satisfied of the correctness of all statements therein from and after my careful examination and inspection of said copy of notice and of said affidavit of service" thereof; and that the certificate was based on a copy of both the affidavit and the notice; and that the money required to redeem the land had not been paid into the state treasury. This certificate was annexed to the deed executed by the Comptroller to the people of the state on the tax sale; and thereupon it and the deed were recorded in the office of the clerk of the county of Erie, on

the 5th day of April, 1887. The affidavit with respect to the service of the notice and the occupancy of the premises remains on file in the office of the Comptroller and was not recorded with the deed. The recording of the certificate of the Comptroller with respect to the service of notices to redeem with the deed distinguishes the case from People v. Ladew, 189 N. Y. 355, 82 N. E. 431; Id., 190 N. Y. 543, 82 N. E. 1092—where it was held that the record of the tax deed was void because there was not recorded with it, as required by section 68 of said act, evidence of the service of notice to redeem. It appears by the testimony of Witmer that he drove out to the premises with a view to serving notice upon any one occupying the same; that he went upon the premises and found no one there, and that the premises presented a neglected appearance and were not under cultivation, but were grown up to weeds, and that he made inquiries in the neighborhood and was unable to find that they had been occupied since the tax sale. The only building on the premises at that time, or at the time of the tax sale and during the intervening time, was an unlocked, dilapidated, and apparently abandoned old granary; and no one had resided on the premises or worked or cultivated the same or occupied or used the same in any manner during that time, excepting that said Zollitch, who occupied the nearest residence thereto in the neighborhood, observing that the farm had been apparently abandoned by the owner, without authority from the owner, express or implied, made occasional use of part of the premises for pasturing two horses and one cow, and by picking apples occasionally, and using the old granary from time to time, but not regularly, as a wagon repair shop. The certificate with respect to the service of notices was made by the Deputy Comptroller, under the seal of the office; and it is claimed that it should have been made by the Comptroller, or that it should have been shown that he was absent from the state, or disabled from acting, or that there was a vacancy in the office at the time. I find that the statute in force at the time this certificate was made gave the deputy the same power in this regard as the Comptroller. 1 Rev. St. (7th Ed.) pt. 1, c. 8, tit. 3, § 18, p. 465.

The learned counsel for the plaintiff contends that the premises were actually occupied in part by Zollitch, and in part by the railroad company; and that, as no notice to redeem was served upon Zollitch and the notice to redeem served upon Mr. Brunn was intended for the Buffalo & Jamestown Railroad Company, the former owner, and not for the owner or occupant at the time, no title was acquired by the people or by their grantee by virtue of the tax sale or the subsequent proceedings thereunder. This contention is based upon the theory that it is not competent for the Legislature, by a curative act, to remedy errors of a jurisdictional nature, or to deprive a party of a constitutional right. It is undoubtedly true that, if the owner or occupant of land sold for taxes has a constitutional right to personal service of a notice to redeem, it is not competent for the Legislature to deprive him of that right by any ex parte affidavit or proceeding on the part of a public official. It would seem that there is no constitutional right to redeem from a tax sale duly held on a tax duly levied, and that the

matter rests in the discretion of the Legislature to give or withhold it; but it is not necessary to decide that question, or whether personal service after publication of the notice to redeem was jurisdictional be- cause required by the statute, nothwithstanding that the statute at the same time provided that the conveyance, after having been recorded as therein provided and after the lapse of the periods of time therein specified, should be conclusive evidence of the giving of all notices required to be given, or whether it could not be or was not cured by the provisions of the original or amendatory acts; for section 65 of the act, as amended, is something more than a curative act or mere rule of evidence. It, in effect, prescribes a short statute of limitations. The Legislature, as the courts have construed the amendment of 1885, as amended by chapter 217 of the Laws of 1891, has declared, among other things, that the tax title shall be good if no action or proceeding to test its validity shall be brought within six months after the enact- men of said chapter 217 of the Laws of 1891, which was approved by the Governor on the 20th day of April, 1891, provided that the con- veyance by the Comptroller, together with his certificate with respect to the service of notices to redeem, shall have been recorded for two years in the office of the clerk of the county in which the lands are situated. Halsted v. Silberstein, 196 N. Y. 1, 89 N. E. 443, s. c. on reargument 196 N. Y. 18, 89 N. E. 449. The statute doubtless does not run, and its running is postponed, not by its express terms, but by operation of law, according to judicial construction, until the owner or person claiming an interest in the premises can maintain an action to determine the right of the claimant under the tax sale; but the Court of Appeals has held that the statute does commence to run as soon as the action can be maintained (Saranac Land & Timber Co. v. Roberts, 195 N. Y. 303, 88 N. E. 753; Halsted v. Silberstein, supra), at least, unless the owner or person claiming an interest is actually in possession, in which event doubt has been expressed as to whether he would be required to begin an action to remove the cloud on the title caused by the tax sale and proceedings thereunder. Meigs v. Roberts, 162 N. Y. 371, 56 N. E. 838, 76 Am. St. Rep. 322; Joslyn v. Rock- well, 128 N. Y. 334, 28 N. E. 604; People v. Turner, 145 N. Y. 451, 40 N. E. 400; People v. Ladew, supra. If the Comptroller's deed had been recorded without any evidence of service of the notice to redeem, then the record thereof would have been a nullity and the statute would not have run (People v. Ladew, supra); but here the statutory certificate of the Comptroller with respect to the service of the notice was recorded with the deed, and, since the original affidavit of service was required to be filed in the office of the Comptroller, the certificate of the Comptroller is the evidence of the service of notice to redeem required by section 68 of the act to be recorded with the deed. Halsted v. Silberstein, supra—memorandum opinion denying motion for reargument. In the case at bar, the defendants took possession of the premises a second time in the month of February, 1892, and have ever since that time remained constructively in possession; and, with the exceptions stated in the findings of certain temporary inter- ruptions of their actual possession, they have remained in actual pos- session of the premises, claiming title thereto by virtue of the tax sale

and the proceedings had thereon, including the deed by the Comptroller to the people and the certificate of the State Engineer and Surveyor; and the deed, together with the certificate of the Comptroller with respect to the service of notice to redeem, had been duly recorded more than two years before; and, therefore, in any view of the case, the statutory period of six months after the enactment of the amendatory statute of 1891 and after the defendants were in possession, expired before the commencement of this action and before the enactment of chapter 711 of the Laws of 1893, which was approved by the Governor on the 16th day of May the same year, which repealed said section 65 of chapter 427 of the Laws of 1855. It is, therefore, unnecessary to consider whether or not such repeal repealed by implication or affected the provisions of chapter 448 of the Laws of 1885, as amended by said chapter 217 of the Laws of 1891; for the rights of the defendants had become vested and fixed by virtue of those statutes prior to that time, and the decisions under the later succeeding statutes, which restricted and limited the owner or person claiming in hostility to the tax title with respect to his remedy (see Wallace v. McEchron, 176 N. Y. 424, 68 N. E. 663), are not in point. As curative acts, doubtless, these statutory provisions would not sustain this tax title with respect to some of the questions presented (see Wallace v. McEchron, supra); but the authority of the Legislature to enact them as statutes of limitations and their constitutionality are no longer open to question, for they have been sustained as statutes of limitations both by the highest court of our own state and by the Supreme Court of the United States. Halsted v. Silberstein, supra; People v. Turner, 117 N. Y. 227, 22 N. E. 1022, 15 Am. St. Rep. 498, s. c. 145 N. Y. 451, 40 N. E. 400; Turner v. New York, 168 U. S. 90, 18 Sup. Ct. 38, 42 L. Ed. 392; Saranac L. & T. Co. v. Comptroller, 177 U. S. 318, 20 Sup. Ct. 642, 44 L. Ed. 786, s. c. 195 N. Y. 303, 88 N. E. 753; Meigs v. Roberts, supra. The Comptroller's deed is presumptively valid; and, since the defendants have succeeded to the rights of the people thereunder, it establishes prima facie their right to the premises, and the burden is on the plaintiff of showing the invalidity of the tax title. Wells v. Johnston, 55 App. Div. 484, 67 N. Y. Supp. 112, affirmed 171 N. Y. 324, 63 N. E. 1095; Baer v. McCullough, 176 N. Y. 97, 105, 68 N. E. 129; Wood v. Knapp, 100 N. Y. 109, 2 N. E. 632; Stewart v. Crysler, 100 N. Y. 378, 385, 3 N. E. 471. The authorities herein cited, in my opinion, dispose of every question raised by the plaintiff, with one exception adversely to it.

The remaining question is whether the premises were sufficiently described in the assessment and in the subsequent proceedings to enable the court to give force and effect to the title attempted to be conveyed by the people of the state. The defendants are not very materially aided I think, on this question, by the statutory provisions which have been discussed; for, whether they be considered as curative acts or as statutes of limitations, they cannot avail to give the purchaser from the state possession or to allow him to retain possession, if the description be so indefinite that it may not be known that the premises claimed under the tax title are the premises which were assessed and sold for the nonpayment of the tax. The rule of construc-

tion applicable to tax titles is that the statutory requirements, construed strictly, must be substantially complied with to divest the owner of his title. Lockwood v. Gehlert, 127 N. Y. 241, 27 N. E. 812; Saranac L. & T. Co. v. Roberts, 195 N. Y. 303, 88 N. E. 753; Sanders v. Downs, supra. If the premises were mortgaged to the defendants by the owner by the description contained in the assessment roll, I am of opinion that there could be no question but that the mortgage would be valid, for there would be no room for doubt as to the premises intended to be covered by it. People v. Storms, 97 N. Y. 364. There is a distinction to be borne in mind between construing a description contained in an ordinary deed or in a mortgage and one contained in a tax title. In the former case the intention of the mortgagor or grantor would be controlling, while in the latter case the question would be whether the description is sufficiently definite to enable the owner and all persons interested to know and ascertain, by inquiry at the appropriate office or examination of the assessment roll, what premises are assessed, and to identify them with reasonable certainty, so that it may be fairly said that a particular tract or parcel of land is the parcel or tract assessed and to which the purchaser on the tax sale is entitled to possession. Tallman v. White, 2 N. Y. 66; Clark v. Holdridge, 12 App. Div. 613, 43 N. Y. Supp. 115; Clason v. Baldwin, 152 N. Y. 204, 46 N. E. 322; Dike v. Lewis, 4 Denio, 237; Zink v. McManus, 121 N. Y. 259, 24 N. E. 467, affirming 49 Hun, 583, 3 N. Y. Supp. 487; Matter of N. Y. C. & H. R. R. Co., 15 Wkly. Dig. 137, s. c. 90 N. Y. 342; City of Rochester v. Farrar, 44 Misc. Rep. 394, 89 N. Y. Supp. 1035. The statutory provisions with respect to the description of the lands of nonresidents assessed, to be inserted in the assessment roll, were contained in sections 12 and 13 of article 2, tit. 2, c. 13, pt. 1 of the Revised Statutes (5th Ed.) vol. 1, pp. 910, 911. Section 13 relates to the assessment of tracts of lands which have not been subdivided or the subdivision of which cannot be ascertained by the assessors; and, since the premises in question were part of a subdivided tract, the subdivisions of which were ascertainable by the assessors and the assessment was made upon that theory, it is only necessary to consider the provisions of section 12, which, so far as material to the present inquiry, were as follows:

"If the land to be assessed be a tract which is subdivided into lots, or be part of a tract which is so subdivided, the assessors shall proceed as follows:

"1. They shall designate it by its name, if known by one, or if it be not distinguished by a name, or the name be unknown, they shall state by what other lands it is bounded.

"2. If they can obtain correct information of the subdivisions they shall put down in their assessment rolls, and in a first column, all the unoccupied lots in their town or ward, owned by nonresidents, by their numbers alone and without the names of their owners, beginning at the lowest number and proceeding in numerical order to the highest.

"3. In a second column, and opposite to the number of each lot, they shall set down the quantity of land therein, liable to taxation.

"4. *   *   *

"5. If such quantity be a full lot, it shall be designated by the number alone; if it be a part of a lot, the part must be designated by boundaries, or in some other way by which it may be known."

The premises in question were described in the assessment roll as part of lot 5, township 9, range 8, consisting of 50 acres, bounded on the north by lands of R. A. W. Ellis; on the east by White's Corners plank road and on the south and west by the lands of L. T. Sowle. There was only one tract of land that could answer that description. White's Corners plank road was the easterly boundary of the lot; and, as the lot was originally laid out by the Holland Land Company, it was subdivided in part into two lots abutting on the White's Corners plank road, each rectangular in form and containing 50 acres. At the time this assessment was levied, the 50-acre lot in the northeasterly corner of the Holland Land Company's lot was owned by said Ellis. That necessarily shows that the other 50-acre lot abutting on White's Corners plank road was the land intended to be assessed. It was at that time bounded on the north by lands of said Ellis and on the south by lands owned by L. T. Sowle; and it was bounded on the west in part by lands owned by him, but only for about half the length of the westerly boundary. It was necessary, however, to continue the westerly boundary line as thus located in a straight line northerly, to inclose 50 acres; and by so doing the line intersects the southwesterly corner of the lands owned by said Ellis at the time the assessment was levied. In this manner it is found that the northerly boundary line of the premises is the southerly boundary line of the lands then owned by said Ellis and corresponds exactly therewith in length. The strict rule applied by the courts in cases of city lots so subdivided, that the original boundaries afford no guide to their identity, is not applicable here. These premises were farm lands and remained as originally laid out by the Holland Land Company; and, therefore, in my opinion, the description was sufficient to identify them, and to afford notice to the owner or to any person interested by an examination of the assessment roll or subsequent proceedings, and to give them information on inquiry at the proper office with respect to the lands that were assessed, and to enable the purchaser of the tax title to take and maintain possession. If, however, the description in the assessment roll and subsequent proceedings does not conform to the requirements of the statute, the tax title is, I think, for the reasons stated, no longer open to attack upon that ground, provided the description be sufficient to identify the premises with reasonable certainty and to enable the court, if necessary, to make a definite decree for obtaining or retaining possession; and I think it is. Unless the courts are to decline to sustain any tax title and are to encourage the nonpayment of taxes, there is no reason for refusing to sustain this one; nor is there any hardship to the owner or to any person interested in the premises in so doing. The owner and all persons interested virtually abandoned their farm and neglected their duty to contribute their due proportion of the expenses of running the state and county government. It is most unfair and unjust to the taxpayers of the state who willingly bear their share of the burdens, to impose upon them the additional burden of paying, in the form of taxes assessed to meet bond issues or otherwise, the taxes of others who are under like obligations but are unwilling to perform their duty. It should be better known and generally understood that tax titles may be sustained, and those who neglect their obligations

with respect to the payment of taxes should take warning of the risk they are running.

I am of opinion, therefore, that the defendants are entitled to judgment dismissing the complaint with costs.

Complaint dismissed.